MATTHEW P. KENNEDY *vs.* HUB MANUFACTURING COMPANY.

Suffolk.   March 2, 1915. — May 20, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Exceptions. *Superior Court. Assignment,* Of wages. *Malicious Interference. Abuse of Civil Process. Evidence,* Competency. *Witness,* Cross-examination.

Under R. L. c. 173, § 106, a motion for an extension of the time for filing exceptions may be allowed by a trial judge without any notice to the adverse party if the motion was filed before the time limit expired, although it is the better practice to notify the opposing counsel in cases where this reasonably may be done.

Since St. 1885, c. 384, took effect the Superior Court always is open for business, and the practice founded on the terms of court that existed before that statute no longer has any foundation. Accordingly a judge of the Superior Court may grant a motion for the extension of the time for filing exceptions after the adjournment of the sitting of the court at which the case was tried.

One Berry carried on under the name Hub Manufacturing Company the business of selling wearing apparel at retail largely on credit. A workman in a shoe factory, who owed Berry $3 for an article purchased, executed and delivered to Berry a power of attorney with power of substitution authorizing Berry "to execute and deliver to the said Berry an assignment of my wages or future earnings." Eight years later Berry caused a corporation to be formed called the Hub Manufacturing Company, to which he transferred his business and bills receivable. Berry was president of the corporation. The treasurer of the corporation, acting under the power of substitution in the power of attorney given by the workman eight years before, executed an assignment of the workman's wages due to him from his employers to the "Hub Manufacturing

Company" and its successors. *Held*, that on these facts a finding was warranted that the account originally held by Berry against the workman had been transferred by him to the corporation, and that the assignment of wages executed under the power of substitution was made to the corporation, the words "Hub Manufacturing Company" not being used in the assignment merely as a trade designation of Berry.

In an action by a workman in a shoe factory against a retail clothing dealer doing business on the credit system for maliciously causing the discharge of the plaintiff by serving on his employer a copy of an assignment of wages alleged to have been executed by the plaintiff to the defendant, if there is evidence that the plaintiff's work was satisfactory and there was no reason for his discharge apart from the annoyance and possible litigation and expense that might be occasioned to his employer in connection with the assignment, and that, after a discussion of the matter between the plaintiff and the superintendent of his employer during eight or ten weeks, the plaintiff was discharged by a foreman of his employer acting under authority from the superintendent, testimony of the plaintiff, that he was discharged by the foreman who said the superintendent "told me to let you go," while not strictly competent as to the alleged statement made by the superintendent to the foreman, was *held* not to have affected injuriously the substantial rights of the defendant, because its purpose was not to show the authority of the foreman to discharge the plaintiff, which had been established by other evidence, but merely to show the fact of the plaintiff's discharge.

In the same case it was *held* that on the evidence in part described above a finding was warranted that the cause of the plaintiff's discharge was the act of the defendant in wrongfully causing the service upon the plaintiff's employer of a copy of the alleged assignment of the plaintiff's wages.

In the same case it was *held* that testimony as to the average wages of those employed in the shop of the plaintiff's employer in the same work in which the plaintiff was employed was competent as tending to show the rate of compensation to which the plaintiff might have attained but for his discharge, there being other evidence that the plaintiff at the time of his discharge was receiving almost as much as such average.

In an action against a corporation by a workman in a factory for maliciously causing the discharge of the plaintiff by serving on his employer a copy of an assignment of the plaintiff's wages executed under a power of attorney to execute "an assignment" of wages which the plaintiff gave to a certain person who transferred it to the defendant, which such person had caused to be incorporated, where that person has testified that he does not remember whether before the defendant was incorporated he had served on a previous employer of the plaintiff a copy of a like assignment of the plaintiff's wages executed under the same power of attorney, evidence is admissible in the cross-examination of this witness, for the purpose of attempting to refresh his recollection, that three years before the defendant was incorporated the witness had caused to be served upon another employer of the plaintiff a copy of an assignment of his wages under the same power of attorney, and for this purpose a letter to the witness, which he has acknowledged receiving, in regard to this subject is competent; *also* the fact that two assignments of the plaintiff's wages were executed under a power of attorney that authorized an execution of "an assignment" has a possible bearing upon the issue of malice.

TORT for an alleged abuse of civil process and malicious interference with the plaintiff's contract of employment, when he was employed as he had been during a long period of time at making heels on shoes at the factory of J. L. Walker and Company at Lynn, by serving on the plaintiff's employer on January 18, 1912, maliciously and with intent to injure the plaintiff a copy of an assignment of wages alleged to have been made by the plaintiff, by reason of which the plaintiff was discharged. Writ in the Municipal Court of the City of Boston dated March 12, 1912.

On appeal to the Superior Court the case was tried before *Hitchcock,* J. The evidence is described in the opinion. At the close of the evidence the defendant asked the judge to make certain rulings, which are referred to generally in the opinion. The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $800.

The verdict was returned on January 30, 1914. The twenty days after the verdict within which exceptions might have been filed without an extension of time expired on February 19, 1914. On February 12, 1914, on motion of the defendant the time for filing a bill of exceptions was extended to March 15, 1914. On March 12, 1914, the time was extended further to April 1. On March 30 the time was extended further to April 6, 1914. On April 6 the time was extended further to April 8 and on April 8 was extended further to May 1, 1914.

On April 28, 1914, the defendant filed a bill of exceptions. All the extensions mentioned above which were made after February 19, 1914, were made either *ex parte* or against the objection of the plaintiff.

Later the bill of exceptions was amended by leave of the trial judge, and on November 13, 1914, the judge made a certificate setting forth the foregoing facts in regard to the extensions of the time for filing the exceptions, and made an order allowing the exceptions alleged by the defendant "if it can be done under the state of facts as set forth in the certificate."

On November 19, 1914, the plaintiff alleged exceptions to the allowance by the judge of the defendant's exceptions and to the denial of a motion made by the plaintiff on March 21, 1914, that

judgment be entered on the verdict. The plaintiff's exceptions were allowed by the judge on the day of their filing.

*F. E. Shaw,* for the plaintiff.

*J. H. Blanchard,* (*H. C. Blanchard* with him,) for the defendant.

RUGG, C. J.  1. This case comes before us on exceptions by both parties. Those of the plaintiff are considered first. The verdict was in favor of the plaintiff. The defendant saved exceptions. Before the lapse of twenty days after the rendition of the verdict, the judge who presided over the jury trial, on motion by the defendant and without notice to the plaintiff, extended the time within which its exceptions might be filed, and thereafter made several further like extensions, each being granted before the expiration of the last. The verdict was returned on January 30, 1914, and the defendant's exceptions were filed two days before the following May 1, when the final extension expired.

While it is better practice to notify the opposing counsel in cases where it may be done within reason, nevertheless the court has power *ex parte* to extend the time for filing exceptions. It is provided by R. L. c. 173, § 106, that "further time" beyond the twenty days there specified may be "allowed by the court." Application for the extension of the time for filing exceptions must be made before the time limited has elapsed, and cannot be made thereafter. *Hack* v. *Nason,* 190 Mass. 346. But there is no requirement in the statute for notice to the other party or a hearing. The matter is one in its nature which may be dealt with summarily. It may be presumed that the time would not be extended unless good cause were shown. There is a heavy responsibility upon all judges that there be no unreasonable delay in the administration of justice. Occasions well might arise where it would be difficult to notify adversary counsel, as, for instance, the sickness or court engagements of the attorney or stenographer upon whose work the preparation of the exceptions rests, or unexpected and unavoidable delay in procuring the necessary data. There is nothing in the reason of the law or its express terms which prohibits such extension of time as was given by the judge in the case at bar. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579, is not inconsistent with this conclusion.

Since the enactment of St. 1885, c. 384, the Superior Court always is open for business, and hence the practice as to terms of

court theretofore prevailing, as exemplified in *Greenwood* v. *Bradford,* 128 Mass. 296, is no longer applicable, and the judge had jurisdiction to grant an extension after the sitting at which the case was tried had adjourned.

The defendant's exceptions rightly were allowed.

2. The action is for malicious interference with the plaintiff's contract of employment. One material issue was whether the acts of which the plaintiff complained were performed by the defendant or by one Oscar E. Berry. Bearing upon this issue was evidence tending to show that in 1902 Berry was carrying on the business of selling wearing apparel at retail largely on credit, under the name of the "Hub Manufacturing Company," and that the plaintiff executed and delivered to him a power of attorney whereby he was authorized, with power of substitution, "to execute and deliver to the said Oscar E. Berry, an assignment of my wages or future earnings" and at the same time became indebted to him to the amount of $3 for a hat purchased. In 1910 Berry with two others caused the defendant to be incorporated and he transferred to it the business theretofore conducted by him, and in connection therewith "bills receivable, conditional contracts of sale" to the value of $6,000. Berry was president of the defendant corporation and A. T. Thornrose its treasurer, and both were on its board of directors. In 1912, A. T. Thornrose, acting by substitution for Berry under the power of attorney executed by the plaintiff to Berry in 1902, made an assignment of the plaintiff's wages due him from his employers, J. L. Walker and Company, to "Hub Manufacturing Company," which, among other provisions, bound the "successors" of the parties. This was evidence sufficient to support a finding that the account originally held by Berry against the plaintiff was transferred to the defendant on its incorporation, and that the assignment of wages of the plaintiff was made by Thornrose to the defendant. Berry testified to the contrary on both points, but the jury were not bound to believe his denials. The assignment was made to the defendant by name. Whether the defendant was in truth the real assignee or whether the words "Hub Manufacturing Company" were used in the assignment merely as a trade description of Berry was a fact to be determined upon all the evidence. The power of attorney authorized an assignment only to "Oscar E. Berry" and

said nothing about the Hub Manufacturing Company, although he then was doing business under that name. If Berry had been intended in the assignment, it would have been natural to use his name. The word "successors" in the assignment finds its most appropriate signification in reference to a corporation rather than an individual. Those concerned with the assignment were officers of the corporation. These and perhaps other circumstances required the leaving of the question to the jury and rendered it improper to rule as matter of law that the assignment was to Berry.

3. If the jury reached the conclusion that the assignment was made to the defendant, it might have been found to be responsible for the conduct which led to the plaintiff's discharge. There was testimony to the effect that, shortly after the date of the assignment, it was shown to the plaintiff by the superintendent of his employers, who asked if something could not be done about it, and that thereafter, during the eight or ten weeks of his further employment, there was conversation about the matter twice a week, and that on one occasion a woman "from the defendant company" came to the office of his employer, whither he was called, and in her presence the bookkeeper asked, "if he wished to pay over that money to the Hub Manufacturing Company." The superintendent of the plaintiff's employers, one Williamson, testified that no foreman discharged employees without consulting him. The plaintiff testified that the foreman discharged him, saying, "Mr. Williamson told me to let you go." While it may be doubtful whether this repetition of words was strictly competent, its admission did not in our opinion injuriously affect the substantial rights of the defendant. St. 1913, c. 716, § 1. Its purpose was not to show the authority of the foreman to discharge the plaintiff. That was established by inference from the testimony of the superintendent. The sequence of events, coupled with the testimony of the superintendent that the "plaintiff's work was satisfactory; that he was a sober man; that he attended to his work; that he knew of no reason respecting the work or conduct of the plaintiff for which he should have been discharged at that time," warranted, if it did not require a finding that the reason was the annoyance and possible litigation and expense which might be occasioned to the employers in connection with the assignment.

It follows that there was evidence sufficient to fasten liability upon the defendant in that it received and accepted through authorized agents the alleged assignment of wages of the plaintiff, *Howland* v. *Blake*, 156 Mass. 543, and that the cause of the plaintiff's discharge was the act of the defendant in causing wrongfully the service of the alleged assignment of the plaintiff's wages upon his employers. *Lopes* v. *Connolly*, 210 Mass. 487. The conclusion of the jury does not rest upon surmise, conjecture or suspicion, but has a foundation in definite facts and rational inferences.

4. The testimony, as to the average wages of those employed in the same work as the plaintiff in the shop of his employers, was competent as tending to show the scale to which the plaintiff might have attained but for his discharge. Indeed, he was receiving almost as much as that.

5. The admission of evidence that in 1907 Berry caused to be served upon other employers of the plaintiff a copy of an assignment of his wages under the same power of attorney, was not error. Berry had testified that he did not remember whether he had served such copy or not. In cross-examination for the purpose of attempting to refresh his recollection in this regard, a letter to him respecting the subject, which he acknowledged receiving, was not incompetent. The power of attorney did not authorize the execution of successive assignments of wages, but only "an assignment." If there had been one assignment in 1907, another utilized by the defendant in 1912 might have a bearing upon the issue of malice.

6. There was no error in denying the defendant's requests for instructions. So far as not given in substance, they were immaterial or unsound. It is not necessary to go through them in detail. The judge performed his functions by stating in plain words the real issues and making clear to the jury what the crucial questions were, without dealing with the requests one by one in his charge.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions overruled.*