ANTONIO LOPES *vs.* MICHAEL R. CONNOLLY.

Essex.    November 8, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Unlawful Interference. Assignment,* Of wages. *Damages,* In tort. *Evidence,* Remoteness. *Practice, Civil,* Conduct of trial, New trial, Exceptions.

One, who serves on the employer of a workman a notice of a supposed assignment of wages by the workman, which in fact was made by a different person of the same name, and on being informed by the workman of the mistake unjustifiably refuses to withdraw the notice and thereby causes the workman's discharge, is liable to the workman in an action of tort for the damages resulting from this unlawful interference with his employment.

In an action for wrongfully causing the discharge of the plaintiff from his employment as a laster in a shoe factory by serving on the plaintiff's employer a notice of an assignment of wages to the defendant supposed by the defendant to have been made by the plaintiff, which in fact was made by a different person of the same name, and refusing unjustifiably to withdraw the notice after information

from the plaintiff of the mistake, where it appears that the plaintiff had been employed in the factory for five or six years and was employed by the piece, that he could be discharged by his employer at any time and could leave the employment at any time, and that he was paid weekly, the plaintiff, upon the question of damages, may show that by reason of the notice of the supposed assignment his wages for three successive weeks were withheld from him by his employer and were paid to him only at a later time, that the notice caused the loss of his regular employment, and that, after his discharge, although using due diligence, he had been for a long time unable to obtain regular work and was compelled to subsist on the precarious earnings which he was able to procure from other sources of employment.

In an action for wrongfully causing the discharge of the plaintiff from his employment as a laster in a shoe factory, where it appeared that the plaintiff's loss of employment was due to the tortious acts of the defendant, that the plaintiff before his discharge was employed regularly at the factory by the piece, that his employment was terminable at the will of his employer or himself, and that he was entitled to recover the fair value of his contract of service, which he had lost by reason of the acts of the defendant, the presiding judge rightly permitted the plaintiff to testify that after his discharge, although using due diligence, he had been unable to obtain regular work, and to show the precarious earnings which he was able to procure from other sources of employment. The period covered by the plaintiff's examination in regard to such other employment after his discharge was about twenty-three months. *Held,* that the period, which the judge in his discretion permitted to be covered by the examination in regard to the plaintiff's employment, did not appear to have been so unreasonably extended that his decision upon it should be revised.

In an action for wrongfully causing the discharge of the plaintiff from his employment as a laster in a shoe factory by serving on the plaintiff's employer a notice of an assignment of wages to the defendant supposed by the defendant to have been made by the plaintiff, which in fact was made by a different person of the same name, and refusing unjustifiably to withdraw the notice after information from the plaintiff of the mistake, it was *said,* that, besides other damages which the plaintiff was entitled to recover, the defendant's persistent and wilful interference also subjected the plaintiff to the injustice and discouragement of having his earnings withheld and to the perplexity of decision as to what course he must take not only to vindicate his rights but to prevent the impending loss of his employment, and that for this mental distress and anxiety reasonable compensation could be recovered.

The denial of a motion for a new trial asked for on the grounds that the verdict was against the evidence and that the verdict was against the law, which were based on questions open at the trial, is not subject to exception.

The denial of a motion for a new trial asked for on the ground that the verdict was against the weight of evidence is within the discretion of the trial judge and is not subject to exception.

The denial of a motion for a new trial asked for on the ground that the damages returned by the jury were excessive is within the discretion of the trial judge and is not the subject of exception.

Where a trial judge in denying a motion for a new trial, asked for on grounds that are wholly within his discretion, makes an order that he " in the exercise of his discretion overrules the motion," the fact that he files with the order a memorandum giving the reasons for his action has no effect upon the order, of which the memorandum is no part, being merely for the information of counsel.

TORT for wrongfully causing the discharge of the plaintiff
by his employer, one Cross, a shoe manufacturer in Lynn, by
serving a notice on Cross falsely stating that the plaintiff had
made an assignment of his wages to the defendant, and by wil-
fully refusing to withdraw such notice after the defendant had
been informed by the plaintiff that he never had made such an
assignment. Writ dated January 12, 1909.

In the Superior Court the case was tried before *Schofield*, J.
It appeared that the defendant, who testified that he was engaged
in the real estate, piano and storehouse business and in lending
money on real and personal property, had lent money to a man
named "A. Lopes," who had made to the defendant an assign-
ment of his wages, and that one Phillips, a clerk of the defend-
ant, having been informed that a man of that name was employed
by Cross, caused a notice to be served on Cross, stating in sub-
stance that the plaintiff had made an assignment of his wages to
the defendant, and directing Cross not to pay the plaintiff such
wages until further notice from the defendant, that Cross with-
held from the plaintiff three weeks' wages payable to him on
December 24 and 31, 1908, and January 7, 1909, and on Janu-
ary 8, 1909, discharged the plaintiff, afterwards paying the
three weeks' wages on January 14, 1909, when the defendant
wrote on the back of the notice a release of the assignment
he had claimed. The defendant testified at the trial that the
plaintiff was not the man to whom he lent the money and who
had made an assignment of wages to him. The plaintiff, among
other matters, testified that he was a hand laster and had worked
at his trade in Lynn about twenty years; that he had worked
for Cross about five or six years up to January 8, 1909; that he
worked for Cross by the piece, and received his wages at the
end of each week; that he earned on an average from $15 to
$16 per week; that on December 24, 1908, the pay day, he
did not receive his wages; that he saw the bookkeeper with ref-
erence to the non-payment of his wages, and as a result of his
talk with her he went to the defendant's place of business and
the following conversation took place between him and the de-
fendant: "I said, 'Are you Mr. Connolly?' He said, 'Yes.' I
said, 'Are you the gentleman that trusteed the pay down to
Cross's office of A. Lopes?' He said, 'Yes.' I said, 'What

for?' He said, 'Well, you owe money to the office.' I said, 'I don't owe you no money; I never got anything from you, Mr. Connolly. You must have made a mistake.' He said, 'I know what I am talking about; I know what I am doing.' I said, 'Mr. Connolly, you must have made a mistake somewheres. I don't owe you nothing. I never got anything from you.' He said, 'I know what I am doing.' I said, 'Well, Mr. Connolly, if you act that way I will have an action against you.' Connolly said, 'All right, bring it in. We will fix it.' "

It was agreed " that the plaintiff worked at Cross's by the piece, and could be discharged by Cross at any time and could leave his employment at any time." Subject to exception by the defendant the judge allowed the plaintiff to testify in regard to the work that he had obtained after his discharge by Cross and the pay that he received for it. The plaintiff's examination upon this subject covered a period from the time of his discharge until " two weeks before Christmas, 1910."

At the close of the evidence the defendant asked the judge to give the following instructions:

" 1. Upon all the evidence the plaintiff is not entitled to recover and the jury should return a verdict for the defendant.

" 2. If the jury find that the defendant was the assignee under an assignment of wages from a man by the name of A. Lopes, and this defendant had reasonable cause to believe that said A. Lopes worked for John H. Cross, the plaintiff's employer, and caused notice of such assignment to be served on said Cross, this defendant is not liable for damages occasioned the plaintiff by reason of said Cross refusing to pay the plaintiff his wages, or by reason of said Cross discharging the plaintiff from his employ.

" 3. If the jury find that the defendant was the assignee under an assignment of wages from a man by the name of A. Lopes, and caused notice of such assignment to be served on John H. Cross, the plaintiff's employer, this defendant is not liable for damages occasioned the plaintiff by reason of said Cross refusing to pay the plaintiff his wages, or by reason of said Cross discharging the plaintiff from his employ.

" 4. If the jury should find for the plaintiff, they are not to consider as an element of damages that the plaintiff's employer refused to pay him (the plaintiff) his wages when due.

" 5. If the jury find for the plaintiff, they are not to consider as an element of damages that the plaintiff's employer discharged him from his employ.

" 6. If the jury should find for the plaintiff, then their verdict must be for nominal damages."

The judge refused to give any of these instructions, and submitted the case to the jury with other instructions.

In regard to the evidence of the amount of the plaintiff's earnings, referred to above, the judge gave the following instruction: " Evidence was also introduced as to what the plaintiff had been doing since the time when he says he was discharged by John H. Cross and Company [Cross] and what wages he had been earning. I wish you to understand very clearly, gentlemen, the proper use to be made of the evidence in regard to what the plaintiff was earning both before and after the time of his discharge. If in the course of your deliberations you come to this matter of awarding damages for the discharge of the plaintiff from his employment you must understand that the evidence as to what the plaintiff was earning both before his discharge and after his discharge was admitted and can be used only as evidence to the jury to enable them to decide accurately, what was the employment or contract worth to the plaintiff at the time when he was discharged. It would not be proper, gentlemen, for you to take the evidence as to what the plaintiff has been doing since his discharge and figure up the amount of money which he has earned and compare it with the amount which he earned during a similar time before he was discharged and award the plaintiff a sum for loss of time since he was discharged from his employment. The plaintiff is not entitled to recover for loss of time since his discharge. He is, however, entitled to recover, if he proves liability and proves that his discharge was the natural and probable consequence of the act for which the defendant is shown to be liable, such sum as the jury deems measures the value of that contract to him at the time he was deprived of it by being discharged from his work. It is just the same as if it were a tangible piece of property which was destroyed. The question for the jury would be, what was the value of that property at the time it was destroyed ? In this case the immediate value under consideration is the value of an employment terminable at will at the time

when the man is discharged by reason of the act of the defendant. That is a question for the jury in the exercise of their fair and impartial judgment to pass upon in the light of all the evidence, using the evidence for the purpose which I have stated."

The jury returned a verdict for the plaintiff in the sum of $395.42. The judge submitted to the jury the special question, " What sum, if any, did the jury allow as damages to the plaintiff for his discharge from his employment? " The jury answered, " $95.42."

The defendant filed a motion for a new trial for the following reasons: " 1. That the verdict is against the evidence. 2. That the verdict is against the weight of the evidence. 3. That the verdict is against the, law. 4. That the damages therein rendered are excessive."

. This motion was argued by counsel, and the judge filed the following order:

" 1. The court rules that the defendant is not entitled as matter of law to a new trial, and in the exercise of its discretion overrules the motion.

" 2. The jury were instructed that if Phillips, the defendant's clerk, served the notice of assignment with the intention that it should apply to the individual working at the Cross factory under the name of Antonio Lopes and his wages were stopped as a result, the defendant would be liable. They were also instructed that the damages to be awarded must be confined to injury to the plaintiff in his property, excluding offense to his feelings. There were two principal elements of damage, unlawful detention of wages and discharge from employment. The jury were not told that they were limited to interest on the wages detained, nor instructed more definitely than above stated how to estimate the damages for detention of wages. No instruction was given to apply in case the jury should find that the tort was wilful or malicious.

" 3. There was evidence in the case from which the jury might have found that the clerk Phillips recklessly concluded without proper investigation that Antonio Lopes, the workman at Cross's factory, was identical with A. Lopes, the defendant's real debtor. They might also have found that when the plaintiff informed Connolly that his wages were stopped, Connolly asserted that

the plaintiff did owe him money, and allowed the stop order to remain upon his wages wilfully under circumstances that might be found upon the evidence to be a wilful and wanton disregard of the plaintiff's rights.

"4. On this view of the facts, if it was the view finally taken by the jury, they might have had doubt as to how to apply their instructions. They were instructed in terms that they could not consider offense to the feelings of the plaintiff, but they might have supposed that they could consider insulting acts or conduct on the part of the defendant. The court believes that upon correct principles of law the jury would be at liberty to consider circumstances of wilfulness or wantonness on the part of defendant as an aggravation of the injury and to award reasonable compensation for the entire wrong, including the aggravation.

"This principle was applied in *Meagher* v. *Driscoll*, 99 Mass. 281, 285, in trespass to real estate, and was recognized as applicable in an action on the case in *White* v. *Dresser*, 135 Mass. 150, 152, if facts existed which would justify its application. In this case there was evidence which would fully justify the jury in finding circumstances of aggravation. If they did so, and considered those circumstances in estimating damages (and it is possible that they did), the court believes and rules that they would not have violated the law, in view of the nature of their instructions and all the circumstances. The court is convinced that the jury made an honest effort to perform their duty conscientiously, and declines to interfere with their action.

"Motion for new trial overruled."

The defendant alleged exceptions, which, after the resignation of *Schofield*, J., were allowed by *Hardy*, J.

*J. H. Sisk,* (*R. L. Sisk* with him,) for the defendant.

*G. P. Beckford,* for the plaintiff.

BRALEY, J. The jury might have been convinced, if no evidence except that of the defendant had been introduced, that there had been an innocent mistake of identity when the defendant, who held as security an assignment of the wages of his debtor, whose name corresponded exactly with the name of the plaintiff, notified the plaintiff's employer, that thereafter no wages were to be paid to the assignor until the amount remaining due had been satisfied. R. L. c. 189, §§ 27, 32–34. St. 1906, c. 390.

But concededly the plaintiff was not the defendant's debtor, and, if the jury believed the plaintiff's testimony as their verdict fully indicates, the defendant, upon being informed of this mistake, instead of rectifying the error insisted upon his right to retain the money, and refused to withdraw the notice. If the defendant had attempted to collect the debt by garnishment under R. L. c. 189, this refusal would have been abundant proof of an abuse of legal process. *White* v. *Apsley Rubber Co.* 194 Mass. 97. *Paine* v. *Kelley*, 197 Mass. 22. The result accomplished by the notice being indistinguishable, the defendant, who acted at his peril, is answerable in damages which are measured by the natural and probable consequences resulting from the attempt to enforce a groundless claim. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. *Markham* v. *Russell*, 12 Allen, 573.

It is certain that the plaintiff was deprived of his wages as they accrued weekly, and he also could show, and, on his evidence of the statements of the foreman at the time of dismissal, and which for this purpose were relevant, the jury could find, that loss of his regular employment also followed. *Zinn* v. *Rice*, 161 Mass. 571, 574. *Costello* v. *Crowell*, 133 Mass. 352. The plaintiff's further evidence, that after his discharge, although using due diligence, he had been unable to obtain regular work and was left without his accustomed means of subsistence, as well as the statement of his precarious earnings from other sources of employment, were admissible.

If the contract had been for a stated term at a fixed compensation, the measure of damages upon a breach by his employer ordinarily would have been the difference between what he would have received and what in fact he had earned, or by proper exertion might have earned, in the same or some other occupation during the unexpired time. *Cutter* v. *Gillette*, 163 Mass. 95. *Busell Trimmer Co.* v. *Coburn*, 188 Mass. 254. The plaintiff's employment was terminable at the will of either party, but this condition does not relieve the defendant, whose wrongful act and not the will of the employer caused him to lose a position, in which the jury could find that so long as his work proved satisfactory his employment would have continued, subject, of course, to any uncertainties of the business and of his ability to labor. The defendant, having procured the plaintiff's discharge

and forced him to enter a field of competition where opportunities for obtaining work under similar conditions of good will with a reasonable prospect of continuity of service, or indeed remunerative work of any kind appear to have been exceedingly limited, and if employment was obtained its continuance was transitory, was liable in damages for the fair value of the plaintiff's contract of service and any loss of time attributable to these tortious acts. *Hill* v. *Winsor*, 118 Mass. 251, 259. *Smethurst* v. *Barton Square Independent Congregational Church*, 148 Mass. 261, 265. *Pye* v. *Faxon*, 156 Mass. 471, 475. *Stynes* v. *Boston Elevated Railway*, 206 Mass. 75. *Richards* v. *Johnston*, 46 Mich. 297.

The instructions were sufficiently favorable to the defendant, and the period of examination permitted by the presiding judge in his discretion does not appear to have been so unreasonably extended that his decision should be revised. *Reynolds* v. *Ocean Ins. Co.* 22 Pick. 191. *Spoor* v. *Spooner*, 12 Met. 281, 285. *Lane* v. *Moore*, 151 Mass. 87, 91.

The defendant's persistent and wilful interference also subjected the plaintiff to the injustice and discouragement of having his earnings withheld, and to the perplexity of decision as to what course he must take not only to vindicate his rights, but to prevent the impending loss of his situation, and for this mental distress and anxiety reasonable compensation could be recovered. *Fillebrown* v. *Hoar*, 124 Mass. 580. *Chesley* v. *Tompson*, 137 Mass. 136. *Lombard* v. *Lennox*, 155 Mass. 70. *Moran* v. *Dunphy*, 177 Mass. 485. But the accidental omission to instruct the jury, that, where there is evidence of a wilful wrong compensatory damages may be enhanced for injured feelings without being specifically set forth in the declaration, was not called to the attention of the judge. *Meagher* v. *Driscoll*, 99 Mass. 281, 285. *Wheeler-Stenzel Co.* v. *American Window Glass Co.* 202 Mass. 471.

The defendant, however, even if no error appears in the admission of evidence and the denial of his requests, relies upon the refusal to grant his motion for a new trial as ground for reversal. If we assume from the general statement at the close of the exceptions that the question was saved, the defendant, while conceding that the order overruling the motion cannot of itself be reviewed, asks to have it set aside as matter of law be-

cause the reasons assigned were erroneous. The first and third grounds of the motion raised questions which, having been open at the trial, are not the subject of exception when presented in a motion for a new trial. *Garrity* v. *Higgins,* 177 Mass. 414. The second ground, that the verdict was against the weight of evidence, having been addressed solely to the discretion of the trial court, only the reasons for not allowing the motion on the fourth ground of excessive damages remain. *Capron* v. *Anness,* 136 Mass. 271. It was wholly discretionary whether a new trial should be granted on this ground, and no rulings of law were intended, or were made.

The order denying the motion * stated the final action of the judge of which the subsequent reasons for the decision formed no part, but were merely for the information of counsel. *Welsh* v. *Milton Water Co.* 200 Mass. 409, 411.

*Exceptions overruled.*

---

* As to the statement required upon an order granting a new trial, see St. 1911, c. 501.