### ISOBEL OWEN *vs.* JOHN F. WILLIAMS.

Suffolk.   November 5, 1947. — February 4, 1948.

Present: QUA, C.J., DOLAN, WILKINS, & SPALDING, JJ.

*Unlawful Interference. Nurse. Physician and Surgeon. Evidence,* Presumptions and burden of proof.

A verdict for the plaintiff at the trial of an action of tort brought by a registered nurse against a physician for wrongfully having procured the authorities at a hospital where she was doing special nursing to dismiss her from a case and prohibit her from doing further nursing in that hospital, was warranted by evidence which did not require a finding that the defendant's conduct was privileged, and which did warrant findings that the plaintiff's relations with the hospital were valuable to her, that the defendant, a prominent member of the hospital staff, by threatening to bring no more patients to the hospital, practically commanded the superintendent of the hospital to dismiss the plaintiff from a case and remove her name from the registry of nurses "on call" at the hospital, that the superintendent did so, and that the defendant's conduct was intended to cause the plaintiff's dismissal, was with full knowledge of the consequences that would result and brought about those consequences.

The burden of proving a privileged occasion justifying a physician, who was a member of the staff of a hospital, in intentionally procuring the dismissal of a registered nurse from the hospital was on him as defendant in a resulting action of tort by the nurse.

A nurse, whose removal from the registry of special nurses "on call" at a hospital was intentionally caused by unprivileged conduct of a physician on the hospital staff, might maintain an action of tort against him without proving that she had a binding contract with the hospital.

TORT. Writ in the Superior Court dated February 10, 1942.

The action was tried before *Williams,* J.

*S. H. Rudman,* (*J. Schneider* with him,) for the plaintiff.

*H. R. Donaghue,* for the defendant.

QUA, C.J.   This is an action of tort by a trained nurse who alleges in the first count of her declaration — the only count now of importance — that the defendant, a physician on the staff of a hospital in Everett, wrongfully, mali-

ciously, unlawfully and with intent to injure the plaintiff "procured" the authorities of the hospital to dismiss the plaintiff "from a case on which she was then acting as special nurse" and to prohibit her from thereafter being called as a special nurse at the hospital, whereby she has been barred from acting as special nurse in that hospital and cannot procure work as a registered nurse on the staff of any other hospital in good standing and has been deprived of her means of livelihood and has been humiliated and has endured great mental suffering.

After a verdict for the plaintiff the trial judge entered a verdict for the defendant under leave reserved. The only question is whether the evidence warranted a verdict for the plaintiff.

The plaintiff testified in substance as follows: She was herself a graduate of the hospital and "was on call . . . in the first preferential list." In 1936, while the plaintiff was doing special nursing in the hospital, her patient was annoyed by a patient of the defendant continuously ringing the bell. The plaintiff asked the defendant's patient to give short rings instead. She immediately demanded "some attention." The plaintiff replied that she was a special nurse but that she would get another nurse. The patient said that she did not care who or what the plaintiff was, but that she (the patient) needed attention. The plaintiff told one of the other nurses that the patient needed attention and "assumed" that she got it within a reasonable time. Even a special nurse would be under the duty to give attention to a patient not her own who was in distress. The next day the defendant demanded that the plaintiff apologize to his patient, which the plaintiff did. On that occasion the defendant said, "I will get you off the . . . registry if it is the last thing I do." His face was red. He was "very, very mad." "He was actually violent." He told the plaintiff to have "nothing to say or do" to him or his patients. From that time on the plaintiff and the defendant never spoke to each other. On October 21, 1941, the plaintiff was on a case at the hospital. A patient of the defendant was in the same room. One evening after

visiting hours were over the plaintiff, desiring to give some needed attention to her patient, requested another nurse to remind some persons then visiting the defendant's patient that it was after visiting hours. The defendant's patient became very excited about this. Two days later the superintendent of the hospital (who had direct charge of the care of patients and of the nurses and had jurisdiction over the plaintiff) called the plaintiff on the telephone and said, "I am omitting[1] you from your case. . . . Doctor Williams wants to talk with you." The defendant, then taking the telephone, "yelled" at the plaintiff, "Why did you tell my patient I was only worth two cents?" The plaintiff denied having told that to the patient. The defendant said, "And why did you tell my patient's visitors to leave?" After more words, the defendant said, "I have told . . . [the superintendent] that you are never to work in this hospital again, that if you come back here to work I will never send another patient here. I have told her it is either you or me. There is not room enough here for both of us." The plaintiff said, "Doctor Williams, you have no right to talk to me like that, or have me taken off the registry." He replied, "It isn't a matter of what I have a right to do, it is what I have done." Later the superintendent said to the plaintiff that the defendant was a very important man in the hospital; that he had said that if the plaintiff were put back on the list he would never send another patient to the hospital; that the superintendent was not a free agent in the matter; and that the plaintiff could not go back on the list until she had seen the defendant and fixed it up with him and placated him. The plaintiff said she could not do that.

There was evidence from other witnesses tending to show the following: The defendant's patient told the defendant that the plaintiff had said to her that the defendant thought he and his patients were the only ones that counted; that he was a two cent doctor and did not know how to take care of his patients; and that the plaintiff "had attempted

---

[1] The word omit seems to have been employed by the witnesses in this case in the now little used sense of dismiss or send away.

to take" for her patient some bed linen and a blanket intended for the defendant's patient. At the suggestion of the floor supervisor the defendant reported to the superintendent that the plaintiff had made the foregoing derogatory statements about him to his patient. Thereupon the superintendent suspended the plaintiff. The superintendent testified that she continued the suspension because the plaintiff "made no effort to make it right," that is, "go to Doctor Williams and straighten out the condition, the . situation, and satisfy him." It was substantially agreed that for a nurse to criticize a doctor to his patient would be a breach of ethics. No witness testified that the plaintiff in fact did make the derogatory remarks above mentioned. She testified in effect that she did not. There was evidence that in 1940 of three thousand eighty-five patients admitted to the hospital five hundred forty were patients of the defendant.

The defendant's position, supported by his testimony, was, in substance, that he was conscious of no ill will against the plaintiff until she brought this action; that he simply reported to the superintendent what his patient had told him as to the conduct and language of the plaintiff, which in his opinion were a breach of ethics; that he did not request the superintendent to omit the plaintiff or to take her name off the list; and that the superintendent acted upon her own initiative. He denied having made most of the statements attributed to him by the plaintiff. It was within the province of the jury to accept this view of the case, but we think it cannot be said that a contrary view was not warranted by the evidence.

If the jury believed the evidence most favorable to the plaintiff they could find that having her name on the hospital's list of nurses and the privilege of nursing at the hospital were business relationships valuable to the plaintiff in that they afforded her a fairly reliable means of access to employment in her profession. They could find that these valuable relationships would have continued, if it had not been for the persuasion and influence of the defendant. They could find that in 1936 the defendant threatened to

get the plaintiff off the registry of the hospital and that in 1941 he practically commanded the superintendent to dismiss the plaintiff on the threat to bring no more patients to the hospital if she did not do so, and that the superintendent acted as she did in consequence of that threat. They could find that the defendant's conduct was purposely directed toward securing the dismissal of the plaintiff from the hospital with full knowledge of the consequences to her, and that it was successful in bringing about that result.

The governing principle of law is set forth in Restatement: Torts, § 766, in these words, ". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby." Our own decisions appear to be in accord with this statement. *Carew* v. *Rutherford,* 106 Mass. 1, 15. *Walker* v. *Cronin,* 107 Mass. 555, 564. *Morasse* v. *Brochu,* 151 Mass. 567, 574–575. *Hartnett* v. *Plumbers' Supply Association of New England,* 169 Mass. 229, 234– 236. *Plant* v. *Woods,* 176 Mass. 492, 498. *Moran* v. *Dunphy,* 177 Mass. 485. *Lopes* v. *Connolly,* 210 Mass. 487. *Martineau* v. *Foley,* 225 Mass. 107. *Ross* v. *Wright,* 286 Mass. 269. *Caverno* v. *Fellows,* 300 Mass. 331, 337–338.

The next inquiry is therefore whether a privileged occasion existed upon which the defendant can rely as justification for knowingly and intentionally causing damage to the plaintiff. As in other instances where justification is required, the burden of proof was upon the defendant to establish the existence of such an occasion. See *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 343; *Berry* v. *Donovan,* 188 Mass. 353; *DeMinico* v. *Craig,* 207 Mass. 593; *Godin* v. *Niebuhr,* 236 Mass. 350, 351; *Connors* v. *Connolly,* 86 Conn. 641, 647; *Carnes* v. *St. Paul Union Stockyards Co.* 164 Minn. 457, 465; *Aikens* v. *Wisconsin,* 195 U. S. 194, 204; Prosser on Torts, § 104, at page 996. We assume that if the plaintiff did disparage the defendant to his own patient a privileged occasion would arise which would justify the defendant in doing something in relation to the

matter for the purpose of maintaining necessary discipline in the hospital and efficient working relations between nurses and physicians. A privileged occasion of some sort might perhaps arise if the defendant had been credibly informed and believed that the plaintiff had made the statements attributed to her, even if in fact she had not made them. We do not decide these questions. The difficulty with the defence is that the plaintiff did not admit either having made the statements or that the defendant had been informed that she had made them. Although no witness testified to the actual making of the statements, there was much evidence that the defendant had been informed that they were made. But none of this evidence bound the plaintiff. The jury could have disbelieved in toto the evidence tending to show a privileged occasion. *Lindenbaum* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 314, 323. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491, 493. It is very seldom that a judge can direct a verdict on oral evidence in favor of a party who has the burden of proof. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452–453. *Reardon Importing Co.* v. *Security Trust Co.* 318 Mass. 304, 307. Since the jury were not obliged to believe that any privileged occasion existed they could have found for the plaintiff on the ground that the defendant's injury to the plaintiff remained wholly unjustified. The conclusion is unescapable that this was a jury case.

It becomes unnecessary to consider whether, if the defendant had a privilege of some kind, he exceeded its limits in what he did, or whether the jury could find that he lost any privilege by resort to improper means or that he was so far actuated by express malice that all privilege ceased. See *Walker* v. *Cronin,* 107 Mass. 555, 564; *Plant* v. *Woods,* 176 Mass. 492, 501, 502; *Moran* v. *Dunphy,* 177 Mass. 485, 487; *Squires* v. *Wason Manuf. Co.* 182 Mass. 137, 141; *Holbrook* v. *Morrison,* 214 Mass. 209, 211; *Caverno* v. *Fellows,* 300 Mass. 331, 337–338; Restatement: Torts, § 766, comment m.

And in order to maintain the action it was not necessary that the plaintiff prove that she had a binding contract with the hospital. It is well settled that an existing or even a

probable future business relationship from which there is a reasonable expectancy of financial benefit is enough. Restatement: Torts, § 766. *Morasse* v. *Brochu*, 151 Mass. 567. *Hartnett* v. *Plumbers' Supply Association of New England*, 169 Mass. 229. *Berry* v. *Donovan*, 188 Mass. 353, 360. *Lopes* v. *Connolly*, 210 Mass. 487, 494–495. *Martineau* v. *Foley*, 225 Mass. 107, *S. C.* 231 Mass. 220. *Godin* v. *Niebuhr*, 236 Mass. 350, 351.

The case of *Rice* v. *Albee*, 164 Mass. 88, cited by the defendant, was doubted in *Moran* v. *Dunphy*, 177 Mass. 485, 486, and was there said to have gone only to a point of pleading. In *McGurk* v. *Cronenwett*, 199 Mass. 457, 460, it was said that the rule of *Rice* v. *Albee* "ought not to be extended to actions not brought for slander or libel." That case is not decisive here. In *Herbits* v. *Constitution Indemnity Co.* 279 Mass. 539, upon which the defendant also relies, there was neither persuasion to break an existing contract nor interference with any future business expectancy.

The exceptions are sustained. The verdict entered by the judge under leave reserved is set aside, and the verdict returned by the jury is to stand, subject to any motion for new trial seasonably filed. *Mitsakos* v. *Morrill*, 237 Mass. 29, 33.

° *So ordered.*