**GLOVER v. LEE, HIGGINSON CORP. et al.**
Civ. No. 50–541.

United States District Court
D. Massachusetts.

Dec. 4, 1950.

Howard S. Whiteside and Parkman, Robbins & Russell, Boston, Mass., for plaintiff.

Herrick, Smith, Donald, Farley & Ketchum and Charles C. Cabot, Boston, Mass., for defendants.

McCARTHY, District Judge.

This is an action of tort for wrongful interference by the defendants with a contract between the plaintiff and his employer. Jurisdiction is based on diversity of citizenship and the amount in controversy. Defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

The allegations of the complaint will be stated in summary form. The plaintiff was employed by one Mansfield to effect purchases and sales of securities. Under this arrangement the plaintiff was entitled to seventy-five per cent of the net profits received by his employer from transactions effected by him. On behalf of Mansfield and subject to his confirmation, plaintiff negotiated an agreement to buy $200,000 of bonds from the Clinton Water District, a Maine corporation, and two days later, negotiated another agreement on behalf of Mansfield to sell the same bonds to defendants at a profit. These arrangements were confirmed in writing.

Shortly thereafter, the complaint alleges, the defendants, "well knowing that plaintiff by his work and efforts had brought about and was responsible for the contract" and with knowledge of the plaintiff's anticipation of sharing in the profits to be received by Mansfield, wrote a letter to Mansfield by which they cancelled their agreement to purchase the bonds from him, stating in the letter that "plaintiff had made material misrepresentations and had admitted the impossibility of performing according to its terms the contract between the defendants and Mansfield". It is averred that the defendants knew that their alleged grounds of cancellation were untrue and were made maliciously. Mansfield accepted the cancellation, by reason of which, the plaintiff complains, he (Glover) lost his opportunity for his commission and sustained other damages.

The facts recited in the complaint are insufficient to maintain an action sounding in contract. The more serious

question posed for consideration is: will these facts sustain an action sounding in tort for intentional interference with a contractual relationship existing between the plaintiff and his employer? A motion to dismiss for insufficiency will be denied unless it appears to a certainty that the plaintiff is not entitled to relief under any state of facts in the complaint. Falk v. Levine, D.C., 60 F.Supp. 660, 663.

I am unable to discover, nor has there been pointed out any Massachusetts case dealing with this particular factual problem directly. For purposes of assistance, therefore, we outline some of the factual situations which have been held to sustain a cause of action.

A rough division is possible whereby four classes of "situations" appear, differentiated by the stage at which interference on the part of the defendant occurs.

In the first, we find that a business relationship exists between the plaintiff and a party whom we shall designate his "co-contractor", inaptly but conveniently. The relationship is not yet cemented by written or verbal contract, nor is it intended that it should be, when the defendant intentionally and without justification or privilege, interferes with it. In the case of Owen v. Williams, 322 Mass. 356, 77 N.E.2d 318, 9 A.L.R.2d 223, for example, the name of the plaintiff, a nurse, was on a "call list" for duty at a hospital. The relationship gave rise to expectancies of economic good. The defendant physician, without justification had the plaintiff's name removed from the registry by threatening to bring no more patients to the hospital. It was held that this interference called for relief in an action of tort.

On the facts, of course, the case at bar is different. A contract exists between Glover and his employer, and the complaint seems directed toward interference with this contract rather than with the relation underlying it, which in itself is valuable to him. On the other hand, a broad interpretation of the complaint might well lead to the conclusion that the plaintiff relies as an element of damage upon the adverse effect which the defendant's conduct had upon the employer-employee relationship itself, and upon the advantages that the plaintiff might have derived therefrom had the opportunity for profit through contract arisen in the future. At any rate, I do not rely upon the Owen decision as a basis for denial of this motion.

In the second stage, the relation between the plaintiff and the co-contractor has advanced to the point where the parties intend and are about to execute a contract when the defendant maliciously procures the co-contractor not to enter into it. This situation is envisioned by the Restatement; Torts, § 766. Massachusetts decisions are in accord. See cases cited in Owen v. Williams, supra, 322 Mass. at page 360, 77 N.E.2d at page 321. Had the defendants without justification or privilege procured Mansfield to refuse to enter into the contract of employment with Glover, there would be no doubt that Glover would be entitled to relief. Such are not the facts.

There is a third fact-scheme, wherein the defendant unjustifiably induces the co-contractor to break an existing contract. This is exemplified in Walker v. Cronin, 107 Mass. 555. There, the court held that an action sounding in tort could be maintained on a declaration which alleged that the defendant unjustifiably induced shoemakers in the employ of the plaintiff shoe manufacturer to leave it, against the plaintiff's will.

Once again, the complaint with which we are concerned is distinguishable. One point stands out above all others. In each of the situations outlined above, there was a direct interference with a contract or business relation. Strictly speaking, this is not so in the present case. Here, the defendants did not do damage directly to the relation underlying the contract, nor directly to the contract itself; rather, they intentionally effected a cancellation of an alleged contract between Mansfield and themselves, which cancellation had an incidental adverse effect upon the expectancy of Glover arising out of the Glover-Mansfield employment contract. Viewed from this aspect, there is no precedent upon which the plaintiff can base his contention that a declaration alleging the same facts

would be invulnerable to demurrer. Where this limited perspective to be adhered to, the motion to dismiss would be allowed.

A tortious interference with a contract or contractual relationship, nonetheless, may be perpetrated in ways other than those cited above, Keene Lumber Co. v. Leventhal, 165 F.2d 815, and the Circuit Court of Appeals for this circuit has, in the above-entitled case, indicated that it takes a broader view of the protection afforded under the Massachusetts decisions. In the Keene case, the facts were these, so far as pertinent: the plaintiff had been doing business with Davenport-Brown, Inc., a Massachusetts, corporation, by selling to it lumber on terms of credit. By a series of chattel mortgages with "after-acquired" clauses and rigged foreclosure sales, the defendants acquired the properties of Davenport-Brown, having lulled the president of the mortgagor into acquiescence with the assurance that the procedure was a mere matter of form necessary as protection against creditors. Davenport-Brown was ultimately adjudicated bankrupt, and the plaintiff was not paid the sum owing to it. The court stated, 165 F.2d at page 821 that the allegations predicated on the theory that the defendants, with knowledge of the indebtedness of Davenport-Brown to the plaintiff, and pursuant to a plan to hinder and defraud both the debtor and its creditors, had tortiously appropriated the property of the corporation and prevented the plaintiff from realizing its debt, made out a direct and independent tort liability under Massachusetts law to the plaintiff for such pecuniary loss as may be proved to have resulted from the conduct of the defendants in stripping the company of its assets.

■ I conclude upon a reading of this complaint and an examination of the authorities, making every intendment on behalf of the plaintiff and viewing everything in a light favorable to him, while not unmindful of the very persuasive brief filed by learned counsel for the defendants, that it may make out a tort claim within the principles enunciated in the Keene Lumber Co. decision. The possible ramifications flowing from the Keene decision,

cannot be foreseen. It charted a legal milestone by granting relief in a case where the defendant by unprivileged conduct and with knowledge of its inevitable consequences tortiously prevented a promisor from performing his contract with the plaintiff. I make no intimation of the extent of the application of the principle to particular factual situations. It is enough for the purpose of deciding this motion that this case may well fall within its orbit. In the Keene case, this tortious "prevention" took physical form. Here it is alleged that by means of misrepresentations, the defendants lulled Mansfield tortiously into acquiescence to a cancellation agreement which most effectively prevented the plaintiff from realizing the fruits to which he was entitled under his contract. It is not a simple case of the unwarranted breach of one contract incidentally affecting another which depends upon it. The pecuniary loss resulted directly from the alleged conduct of the defendants who tortiously stripped Mansfield of the "asset"— the contract to purchase the bonds—upon which the commission depended.

Defendant in his brief relies solely upon the case of R. J. Caldwell Co. v. Fisk Rubber Co., 62 F.2d 475, a case decided by the Circuit Court of Appeals for this circuit, five years prior to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. The facts have a striking similarity to those which we have under consideration. Dissimilarities, however, must be noted. The contract in the Caldwell Co. case contained a proviso that the plaintiff would be entitled to commissions from his employer only to the extent that goods were actually shipped and accepted. Secondly, the defendant there simply refused to accept goods from its supplier without legal justification, whereas in this case the defendants are alleged to have effected the cancellation agreement by means of intentional misrepresentations.

The complaint, the motion to dismiss, the hearing and the briefs on the motion constitute the proceedings to date, and it cannot be said with finality that a cause of action does not exist, even if it were true that it was stated defectively. 2 Moore's

Federal Practice, 2d Ed., par. 12.09 at p. 2257. As was stated in Tyler Fixture Corp. v. Dun & Bradstreet, Inc., D.C.W.D. Mich.S.D., 3 F.R.D. 258, 259, "Upon motions to dismiss, generally speaking, justice is more likely to be attained by leaving the merits of the cause to be disposed of after submission of proofs".

The Rules of Civil Procedure, 28 U.S. C.A. provide means whereby a defendant may seek a timely disposition of a complaint which he believes to be without substance. In view of the foregoing, the motion to dismiss the complaint is denied. The legal phraseology of the complaint leads inescapably to the conclusion that the case on the present status of the pleadings is properly before the court.

Motion denied.