CAMPANELLA & CARDI CONSTRUCTION COMPANY *vs.*
COMMONWEALTH.

Suffolk.   April 8, 1959. — May 15, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Contract*, Building contract. *Practice, Civil*, Exceptions: what questions
open; Requests, rulings and instructions; New trial; Rehearing.
*Words*, "Engineer."

Where a judge heard a case without jury and filed a voluntary report
containing rulings of law and stating all the material facts upon
which his general finding was based, an exception to the report without
specification of particular rulings objected to was an exception to the
general finding and raised the question of its correctness on the facts
stated. [233]
In a case tried without jury, an exception to denial, without statement
of ground, of a request for a ruling that the general finding by the judge
was not warranted by the evidence, which the judge had permitted the
excepting party to file three days after denial of a motion by that
party for a new trial, brought to this court the question of the suffi-
ciency of the evidence to support the general finding even though that
was a question which was or might have been raised at the trial. [233]
An exception to denial of a motion for a new trial of a case heard with-
out jury raised no question as to a ground of the motion that the gen-
eral finding was against the weight of the evidence. [234]
During performance of a contract with the Commonwealth for highway
construction, the staking out by an engineer of the Commonwealth of
the area of two access ramps in such a way as not to require removal
of a ledge between the ramps and to leave an "island" of rock between
them, instead of staking out the area in such a way as to require the
removal of all the material therein as specified in the contract plan,
was an "act of omission or commission" by an agent of the Common-
wealth within the meaning of those words in a contract provision re-
specting "claims of the contractor for compensation other than as
provided for in the contract on account of any act of omission or com-
mission by the . . . [Commonwealth] or its agents." [235–236]
Where a representative of the Commonwealth supervising highway con-
struction under a contract had made an interpretation of the contract,
binding on the contractor, as not requiring the removal of rock between
two access ramps to be built and the contractor had proceeded with
the construction of the ramps in accordance with such interpretation,

and subsequently representatives of the Commonwealth ordered the rock removed and the contractor was paid the contract unit price for its removal, a provision in the contract allowing the Commonwealth's representatives to make alterations in the work for which the contractor was to be paid at the unit prices did not preclude him from recovering additional compensation for extra work necessitated by doing the removal of the rock at the later time and under different conditions. [236]

"Engineer" as used in a road construction contract with the Commonwealth defining that word as meaning the "chief engineer . . . acting directly or through an authorized representative" included a "resident engineer" of the department of public works on the job site who was shown to be such an authorized representative, and a provision of the contract that the chief engineer's "assistants are not authorized . . . to issue instructions contrary to the plans and specifications" did not restrict the authority of the resident engineer to make a conclusive interpretation of the plans and specifications under a provision of the contract authorizing the "engineer" to do so. [237]

Where a judge hearing without jury a proceeding against the Commonwealth was in error in certain rulings leading to a general finding for the respondent, and denied a motion for a new trial grounded on mistake of law and a request, received in connection with the motion, for a ruling that the general finding was not warranted by the evidence, but purported to find a maximum amount of damages to which the petitioner would be entitled if the rulings were wrong, this court in the circumstances ordered the denial of the motion for new trial vacated and the case to stand for further proceedings in the Superior Court in the light of correct rulings as indicated by this court in order that the petitioner have the recovery shown due by the correct rulings as applied to proved facts. [238]

PETITION, filed in the Superior Court on November 23, 1954.

The case was heard by *Morton,* J.

*Francis V. Matera,* (*John H. F. Calver* with him,) for the petitioner.

*Joseph H. Elcock, Jr.,* Assistant Attorney General, (*Eugene G. Panarese* with him,) for the Commonwealth.

WHITTEMORE, J. This is a petition under G. L. c. 258 for compensation alleged to be due from the Commonwealth for extra work done by the petitioner under a contract of August 11, 1953, for the construction of a section of highway at the intersection of Routes 3 and 128 in Burlington.

The judge found for the respondent and filed a "report of material facts," expressly stated to be a report of all the

material facts upon which the judge's conclusion was based. It contained rulings of law and the decision of the judge. The petitioner claimed an exception to the report, without specification of particular rulings.

The petitioner filed and was heard on a motion for a new trial on the grounds that the finding was against the weight of the evidence and constituted a mistake of law, and claimed an exception to the denial of the motion. Three days after this motion had been denied the judge allowed the petitioner to file, and the judge denied subject to the petitioner's exception, the request for a ruling that a "finding for the respondent is not warranted on the law and evidence of this case." Two evidential questions are also presented by the bill of exceptions.

1. Where the basis for a general finding or decision is not in dispute an exception thereto suffices to raise the question of law whether it was warranted. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166–167. *Barton* v. *Cambridge*, 318 Mass. 420, 424. *Employers Mut. Liab. Ins. Co.* v. *Merrimac Mills Co.* 325 Mass. 676, 678, n. 2. Contrast *Graustein* v. *Boston & Maine R.R.* 317 Mass. 164, 166–168.

We assume that the belated request for a ruling was received in connection with the motion for a new trial. So received, it could have been denied on the ground that it presented a question of law which was or could have been raised at the trial. *Haines Corp.* v. *Winthrop Square Cafe, Inc.* 335 Mass. 152, 154. We think, however, that the action of the judge in allowing it to be filed, and denying it without specification of ground, shows an intent that the petitioner have the right of review of the issue stated.

We rule that the exception to the voluntary report was an exception to the general finding and decision for the respondent and that it brings here the question of the correctness of the decision on the facts which the judge found, and stated were the basis for his conclusion, and on the subsidiary rulings; and that the denial of the request for a ruling raises the issue of the sufficiency of the evidence to support the finding for the respondent. We do not intimate that,

had the request been filed at the time of argument on the motion and denied without indication of basis for the denial, any question would have been presented for review. See *Haines Corp.* v. *Winthrop Square Cafe, Inc., supra.*

The statute, G. L. c. 231, § 129, gives but two grounds for filing a motion for a new trial as of right; mistake of law and newly discovered evidence. Therefore, no question is presented by the exception to the denial of the motion on the ground that the finding was against the weight of the evidence. *Scano, petitioner,* 338 Mass. 7, 8–9.

2. To judge the correctness of the finding for the respondent on stated facts we must accept those facts as the judge has found them. We do not for this purpose refer to the evidence summarized in the bill of exceptions.

The report finds as follows: This petitioner had a contract with the Commonwealth for the construction of about a mile of new Route 3, and the issue relates to an area in the southwest quadrant of the clover leaf where Route 3 crosses Route 128. The cross section plan applicable to the quadrant called for the removal of all material therein. The resident engineer "having such authority as is granted by the chief engineer under the . . . specifications" staked out the quadrant in such a way as not to require the removal of the ledge, and to leave an "island" of rock between access ramps.[1] After the excavation of the ramps the assistant chief engineer and the chief engineer ordered the rock island removed and the petitioner removed it and complied with the provisions of the contract necessary to preserve its rights. Article 58 of the contract specifications provides that "[a]ll claims of the contractor for compensation other than as provided for in the contract on account of any act of omission or commission by the . . . [Commonwealth] or its agents must be made in writing . . . ." Article 28 provides that the engineer shall decide all questions which

---

[1] The evidence shows a possible basis for an interpretation in that the cross section plan showed the grades of the resulting slopes to be those specified for earth banks, and the "typical section" for rock excavation showed a steeper slope grade. It is stated in the bill that a change in staking was made by the resident engineer after rock was discovered.

may arise and his determination and decision shall be final and conclusive. "[T]he decision of the resident engineer to interpret the cross section as not requiring the removal of all material in the island is not an act of omission or commission as set forth in article 58. If it were, the contractor suffered some financial damages" in having to bring back its equipment and because the first blasting in the area affected the ledge so that in the final blasting "larger lumps of material would result with some additional expense for the removal thereof." If the petitioner is entitled to recover under article 58, "the sum of $5,000 would be more than adequate compensation for any damages . . . suffered." Articles 3 and 22 provide that the engineer may make alterations in the form and character of the work and that the contractor shall be paid therefor at prices based upon prices allowed on the same character of work under the specifications. The contract proposal estimated that excavation of 140,000 cubic yards of rock would be required; the bid price for rock excavation was 78 cents per cubic yard; a total of 137,000 cubic yards was actually excavated including the island; the contractor has been paid therefor at the contract price. "[T]his situation is covered by articles 3 and 22 of the specifications . . . . [T]he engineer, at any time, could have ordered the removal of the island, and at a cost of 78 cents per cubic yard." The report notes the contention of the petitioner that there was a "change" in the contract in that because of the first blasting the material became "unconsolidated" with an additional expense for removal. The report then concludes that the "only additional expense I find not to exceed $5,000 as above set forth, and that should be the limit of its recovery, if the petitioner can recover at all. I find and rule that the petitioner, having already been paid for the removal of this island . . . is not entitled to any further compensation."

We think that, on these facts, it was error to rule that the staking out of the area to leave the island unexcavated was not "an act of omission or commission" by an agent of the Commonwealth. The report implies a finding that the

resident engineer was exercising the powers of the engineer in thus interpreting the contract. It was a misconstruction of the contract which the contractor, on the facts found, was bound to accept. See *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 205–208. The right in the engineer to alter the work does not mean that an interpretation binding on the contractor can be changed with impunity after the contractor has acted on the interpretation supplied. See *M. DeMatteo Constr. Co.* v. *Commonwealth*, 338 Mass. 568, 573–585.

There is an implied ruling that if this is the proper construction of article 58 the petitioner is entitled to its additional expenses. The findings that "$5,000 would be more than adequate compensation" and that "[t]he only additional expense I find not to exceed $5,000 as above set forth," are subject to the construction that the judge in making them acted on evidence and, where he found it uncertain, made maximum allowance for the petitioner.[1] Neither party has taken an exception which raises any question of law as to that finding. We construe it as a finding of damage in the amount of $5,000, on the premise, required by other findings, which are controlling, that the petitioner may recover no more than 78 cents per cubic yard plus the additional expense of doing the work at a later time and under different conditions. Upon the return of the rescript the case will be in order for judgment for the petitioner on the finding of damage of $5,000 (G. L. c. 231, § 124), subject to such action as the judge may take in the light of our construction that there is finding of damage in

---

[1] The bill of exceptions, in stating evidence, not at this point relevant, states that there was conflicting evidence on the question of damages, and that "Witnesses for the petitioner originally claimed damage in varying amounts of $122,500 and $106,281.63. Later it was developed that a breakdown of damages submitted to the Commonwealth by the petitioner was in the amount of $72,559.77. Neither of the above figures credited the Commonwealth of Massachusetts with $23,790 actually paid by the Commonwealth for the removal of this disputed material at the contract price of 78 cents per cubic yard." It does not appear that there was no other evidence on damage, and the statement that the bill contains all the evidence material to the issues raised by it is not conclusive because the only aspect of damage relevant to the denial of the request for a ruling was whether there was any evidence of damage.

a certain amount and our holding (point 3, *infra*) that the ruling made in connection with the denial of the petitioner's motion was erroneous. If our conclusion of a factual basis for the figure of $5,000 is unwarranted, the judge will have the opportunity for appropriate action. See *McKinley* v. *Warren*, 218 Mass. 310, 311–312; *Mitsakos* v. *Morrill*, 237 Mass. 29, 33; *Sheriff* v. *Gillow*, 320 Mass. 46, 48–49; *Owen* v. *Williams*, 322 Mass. 356, 362; *Long* v. *George*, 296 Mass. 574, 577.

There is no basis for claim of error in the other rulings of the judge underlying the finding for the respondent.

3. The denial of the request to rule directs our attention to the evidence, but only to determine if on the evidence a finding for the Commonwealth was warranted. We think it was not in the respect already indicated. Article 1 of the specifications defines "engineer" as "The chief engineer of the department acting directly or through an authorized representative, such representative acting within the scope of the particular duties entrusted to him." The chief engineer testified that the resident engineer works under the supervision of the district highway engineer and that the resident engineer is an authorized representative of the chief engineer on the job site. Article 28 provides that "[t]he engineer shall . . . decide all questions which may arise as to the interpretation of any part of the contract, especially the plans and specifications which are a part thereof, as to the fulfillment of this contract on the part of the contractor, and the determination and decision of the engineer shall be final and conclusive . . . ." We think that "engineer," as used in article 28, was, on the chief engineer's testimony, inclusive of "resident engineer." See *M. DeMatteo Constr. Co.* v. *Commonwealth*, 338 Mass. 568, 577, n. Article 35, which provides that "[t]he engineer may appoint . . . assistants and representatives" and that "assistants are not authorized . . . to issue instructions contrary to the plans and specifications," does not appear to restrict the authority of the resident engineer as an "authorized representative of the chief engineer on the job site."

We see nothing in the contract or the other evidence which bars the petitioner from recovery, inasmuch as it has, as the bill of exceptions states, "complied with the provisions of the contract necessary to preserve . . . [its] rights." [1]

It does not follow that a new trial must be had because of the erroneous denial of the request to rule that a finding for the respondent was not warranted. No more is required in the way of new proceedings than is necessary to correct the error. On the record the error will be corrected by the entry of judgment for the petitioner as stated in point 2. But the petitioner is entitled to have the judge decide the issues raised by the motion for a new trial, and exercise his discretion in respect thereto, in the light of the correct ruling on the request. The order denying the motion for a new trial must be vacated and the case is to stand subject to determination in the Superior Court of the extent, if any, to which further findings should be had, with or without the taking of evidence, in order that the petitioner have the recovery shown due by the rulings of the judge, as modified by our ruling, as applied to proved facts.

4. We see nothing in the evidential exceptions. In any event they related to evidence bearing on the issue on which we have ruled for the petitioner.

5. The entry is to be: exceptions sustained; further proceedings in accord with this opinion.

*So ordered.*

---

[1] In view of this statement we do not reach the issue of the effect of the provision in article 58 reading: "All claims . . . for compensation . . . on account of any act of omission or commission . . . must be made in writing to the engineer . . . .. The determination of the engineer shall be final upon all questions as to the amount and value of such work, and the fact and extent of such damage." See *G. L. Rugo & Sons, Inc.* v. *Lexington,* 338 Mass. 746, 749-751.