## R. J. CALDWELL CO., Inc., v. FISK RUBBER CO.

### No. 2718.

Circuit Court of Appeals, First Circuit.

Jan. 3, 1933.

Lee M. Friedman, of Boston, Mass. (Paul D. Turner and Friedman, Atherton, King and Turner, all of Boston, Mass., on the brief), for appellant.

Albert A. Schaefer, of Boston, Mass. (Ropes, Gray, Boyden & Perkins, of Boston, Mass., on the brief), for appellee

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an action of tort for wrongful interference by the defendants with a contract between the plaintiff (which we shall refer to as the Caldwell Co.) and the Connecticut Mills Company (which we shall refer to as the Mills). It was tried before a jury. At the conclusion of the evidence the trial judge directed a verdict for the defendant. The

present question is whether that direction was right.

The Fisk Company was a large user of tire fabrics. The Connecticut Mills manufactured them. Caldwell was selling agent for the Connecticut Mills, getting his pay from commissions on the amount of all invoices for goods shipped by the Mills on contracts obtained by him. Under date of November 29, 1919, the Connecticut Mills and Fisk made a contract for the sale and purchase of 13,500,000 pounds of tire fabrics to be delivered from 1920 to 1924, inclusive. Caldwell appears to have been the agent for the Connecticut Mills through whom this contract was negotiated.

Caldwell's agency arrangement expired by its own limitation on December 31, 1922. A dispute having arisen as to his rights to commissions under the large contract with the Fisk Company, a new agreement was entered into between him and the Connecticut Mills. This agreement was in writing and provided that "the agent (Caldwell) is entitled to its said commission only upon and to the extent that the goods are actually shipped and accepted by the customers, and at no time shall the Agent be entitled to its said commission except upon and to the extent of goods actually shipped to the customer." It further provided: "That the mill at all times has the right to modify, waive, rescind, terminate or cancel any and/or all sales contracts in whole or in part with customers as it may deem best for its interests without regard to the Agent's commission, and in any such case the Agent agrees to and does hereby consent thereto, * * * and in case any such contract is rescinded, terminated or cancelled it (the Agent) shall not have or be entitled to any commissions or claims whatsoever with respect to the unshipped portion of such contract."

In December, 1925, when there was still an undelivered balance of 4,151,220 pounds, the Fisk Company notified the Connecticut Mills that it could not go on with its contract. The Fisk Company made no claim that the Mills was in any way in default, and conceded that in declining further performance it was breaking the contract without legal justification. Negotiations for the settlement of the matter by payment of damages by Fisk to the Connecticut Mills were entered into. During these negotiations it was pointed out by the Fisk Company that if the contract had been carried through Caldwell would have been entitled to commissions which were fig-

ured at $106,658.84, and the question was raised whether the Connecticut Mills would be obligated to pay this amount to Caldwell if it settled the matter with the Fisk Company. The Fisk Company's representatives advised that there was no liability to Caldwell by the Connecticut Mills. The point was finally settled between Fisk and the Mills that they would accept in settlement of the contract a payment which did not include any commissions to Caldwell; and that the Fisk Company would indemnify the Mills for all payments which they might have to make to Caldwell for commissions on the canceled part of the contract. It was also agreed that in case of litigation over the matter—which was apparently recognized as probable—Fisk would undertake the defense of the action and the Mills would co-operate.

Caldwell made claim for his commissions on the undelivered portion of the contract, and eventually brought suit against the Mills in the Supreme Court of New York for breach of his agency agreement. In the trial court there was judgment in Caldwell's favor. This judgment was reversed in the Appellate Division and judgment was ordered for the Connecticut Mills, 225 App. Div. 270, 232 N. Y. S. 625. This judgment was affirmed without opinion by the Court of Appeals of New York, all judges concurring. 251 N. Y. 565, 168 N. E. 429.

Thereafter Caldwell brought the present action. In the first count it is claimed that Fisk "well knowing the terms of the contract between the plaintiff and the Connecticut Mills Co. * * * unlawfully, maliciously and without legal right did interfere with the contract relation between the plaintiff and the Connecticut Mills Co., and by such unlawful and malicious interference did procure, instigate and induce the said Connecticut Mills Co. to neglect and to refuse to perform its obligations in accordance with the terms of said contract." In count 2 the plaintiff's claim is that Fisk "for its own advantage maliciously, unlawfully and without legal right interfered with the said contract of the plaintiff by entering into an arrangement with the Connecticut Mills Co. to assume the obligation of the Connecticut Mills Co. to the plaintiff," and that the Fisk Co. "caused the contract between the Connecticut Mills Co. and the defendant to be cancelled," and "caused the Connecticut Mills Co. to refuse to make payments to the plaintiff under said contract, etc." There was a third count in the declaration but it adds nothing.

As between Caldwell and the Connecticut Mills we take it as settled by the New York case that Caldwell had no right to commissions on the undelivered portion of the contract. There is no contention that the Connecticut Mills did anything to bring about the breach of its contract with Fisk. That contract was broken by the Fisk Company without legal justification. There is no evidence, and no contention, that in taking that step Fisk acted under any other motive or purpose than the protection of its own interests. Apparently, its managers decided they would rather break the contract and pay the damages, than go on with the large deliveries which it was obligated to take—a situation by no means unprecedented.

The fact that Caldwell's interests would be adversely affected by the Fisk Company's breach of its contract, and that this fact was known to the Fisk Company, did not render the Fisk Company liable to Caldwell. Fisk had no contractual relation with Caldwell; it was not urging upon the Connecticut Mills Company any action which would result in a breach of the contract between Caldwell and the Mills; in fact, as the New York decision shows, the contract between Caldwell and the Mills was not broken by the Mills. To hold otherwise would be novel, and would lead to extraordinarily far reaching consequences. If Fisk and the Connecticut Mills had both stood upon their legal rights, and the case between them had been fully tried out, and damages had been assessed and paid by Fisk, it is clear that Caldwell would have had no claim on anybody for his loss of commissions.

The present case, therefore, comes down to the question whether the action of the Fisk Company in negotiating a settlement which made no provision for the payment of Caldwell's commissions was an actionable wrong as to him. We are clearly of opinion that it was not. It deprived him of nothing to which he was then entitled. The only way by which he became entitled to commissions was by the delivery and acceptance of goods under the contract between the Connecticut Mills and the Fisk Company. Caldwell had no right to insist as against the Fisk Company that it should accept such deliveries, nor any right of action against the Fisk Company for refusing to accept them. The terms of the settlement between the Mills and the Fisk Company deprived Caldwell of nothing to which he had any legal claim. In maintaining that the Mills was under no liability to Caldwell for commissions on the undelivered balance of the contract, the Fisk Company was right. By guaranteeing that view of the law it in no way injured Caldwell. If the sum which he now claims as commissions had been included in the damages paid by Fisk to the Mills, Caldwell could never have got any part of it, because the Mills were under no liability on that account.

Cases dealing with malicious interference in contracts have no application here.

The judgment of the District Court is affirmed, with costs.