## Taxin et al. v. Pennsylvania Railroad Company

*Ned Stein,* for plaintiffs.

*Barnes, Dechert, Price & Smith,* for defendant.

BOK, P. J., August 3, 1950.—We are faced with preliminary objections, which must be sustained, to an amended complaint that seeks an accounting under Pa. R. C. P. 1021.

The complaint alleges that almost 700 cars of fruit and vegetables were shipped from points in Florida and California consigned to plaintiff here; that plaintiff does not have the bills of lading, which, on standard ICC forms, are in the shippers' possession and copies in the possession of the carriers; that plaintiff had an oral contract with the shippers to sell the produce for the best price available and to receive a commission for doing so; that the produce, damaged in transit by a carrier's negligence, was sold by plaintiff (presumably after delivery to him) at inferior prices; that the shippers settled with either the initial or delivering carrier and have no further claim against the carriers; that the settling carrier deducted the amount of commission from the settlement and now holds a fund to which plaintiff is entitled but can't get. Defendant is the delivering carrier, which plaintiff has sued on the theory that the Carmack amendment to the Interstate Commerce Act allows him to do so; see 49 U. S. C. §20 (11).

This theory, while plausible, is clearly unsound.

The purpose of the Carmack amendment, made necessary by the intricacy of modern transportation, was to relieve the owner of damaged goods of having to trot about the country looking for the exact culprit railroad to sue for negligence. By the amendment any link in the transportation chain may be sued, in derogation

of the common-law doctrine that only the culprit could be proceeded against.

There is no question of the way the amendment works: the only question is the nature of the damage for which the machinery is available.

The Cummins amendment made, inter alia, the delivering carrier liable for the full damage to the shipment.

The Newton Amendment of March 4, 1927, c. 510, 44 Stat. at L. 1448, provides:

". . . any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company . . . over whose line such property may pass. . . ."

Plaintiff has brought his suit under these amendments and hence must take the consequences of them. Had he alleged that defendant made the settlements and held the fund, we would have to meet head on the idea that in a purely Pennsylvania suit the conveniences of the third-party beneficiary and unjust enrichment rules would be available to him, and that a simple action for money had and received might be maintained. But the complaint and the argument clearly show that the situation is interstate and not local, and that plaintiff is trying to wring from Federal law the right to sue a carrier for the proceeds of a breached contract between him and his shippers. We do not think that the amendments can be stretched so far.

Plaintiff has his right of action against the shippers for breach of the commission contract. The amendments did not seek to make transportation an alchem-

ist's crucible for rendering into gold the incidental benefits of secondary claimants. If so, Congress could have said so as clearly as it has limited recovery to damages to the property transported.

The carriers were required to deduct the commissions, since the shippers were entitled only to their net loss, and the expenses and commissions might possibly not be claimed. See Gillingham v. Dempsey, 12 S. & R. 183 (1824) ; Wallingford v. Kaiser, 191 N. Y. 392 (1908) ; Chicago, etc., Railway Co. v. McCaull-Dinsmore Company, 253 U. S. 97 (1920) ; Baltimore Terminal R. Co. v. Becker Milling Machine Co., 272 Fed. 933 (C. C. A. 7th, 1921) ; "The Boston", Fed. Cas. No. 1671 (1870) ; Illinois Central Railroad Co. v. Crail, 281 U. S. 57 (1930) ; Continental Distributing Co., Inc., v. Reading Co., 168 F.(2d) 967 (C. C. A. 3rd, 1948).

Commissions do not give a consignee any interest in the contract of shipment or in the goods shipped. The early case of Root v. Mohr et al., 19 W. N. C. 403 (1887), involved the very question of whether an agent who had no interest in a contract between defendant and the agent's principal, except the commission he was to earn for his services, might sue in his own name for his commission. Apparently the agent had made the contract for the principal—which is not true in the instant case since plaintiffs were the shippers' agents only for purposes of resale of the produce. The court sustained defendant's demurrer, stating flatly:

"The mere fact that an agent is to receive a compensation from his principal for his services in effecting a contract, has never been held to give him a property in the subject of the contract, or such an interest as will enable him to sue for a breach of it in his own name."

The rule in the Mohr case has since been incorporated in the A. L. I. Restatement of The Law of Agency,

§372(2). The comment on that subsection includes the following:

"An agent entitled to receive a commission from his principal upon the performance of a contract which he has made on his principal's account does not, from this fact alone, have any claim against the other party for breach of the contract, either in an action on the contract or otherwise."

In Caldwell v. Fisk Rubber Co., 62 F.(2d) 475 (C. C. A. 1st, 1933), a closely similar situation was presented and decided against the broker. Caldwell was the selling agent for the Connecticut Mills, receiving commissions on the amount of all invoices for goods shipped by the mills on contracts obtained by him. Through his efforts the Connecticut Mills and Fisk made a contract for the sale and purchase of a substantial quantity of tire fabric. Subsequently Fisk Company (the buyer) notified the seller that it could not accept any further shipments, admitting that it was breaking the contract without legal justification. The mills accepted in settlement of its claim against Fisk an amount which did not include any commissions to Caldwell. Caldwell tried unsuccessfully to recover from the mills for breach of his agency agreement, and judgment was entered in favor of the mills against Caldwell. Thereafter, Caldwell brought a tort action against the buyer, Fisk, for alleged wrongful interference with his contract and commission rights. The court rejected Caldwell's claim in language that is apposite here:

"The fact that Caldwell's interests would be adversely affected by the Fisk Company's breach of its contract, and that this fact was known to the Fisk Company, did not render the Fisk Company liable to Caldwell. Fisk had no contractual relation with Caldwell; it was not urging upon the Connecticut Mills Company any action which would result in a breach of

the contract between Caldwell and the Mills; in fact, as the New York decision shows, the contract between Caldwell and the Mills was not broken by the Mills. To hold otherwise would be novel, and would lead to extraordinarily far reaching consequences. If Fisk and the Connecticut Mills had both stood upon their legal rights, and the case between them had been fully tried out, and damages had been assessed and paid by Fisk, it is clear that Caldwell would have had no claim on anybody for his loss of commissions.

"The present case, therefore, comes down to the question whether the action of the Fisk Company in negotiating a settlement which made no provision for the payment of Caldwell's commissions was an actionable wrong as to him. We are clearly of opinion that it was not. It deprived him of nothing to which he was then entitled. . . . The terms of the settlement between the Mills and the Fisk Company deprived Caldwell of nothing to which he had any legal claim. In maintaining that the Mills was under no liability to Caldwell for commissions on the undelivered balance of the contract, the Fisk Company was right. By guaranteeing that view of the law it in no way injured Caldwell. If the sum which he now claims as commissions had been included in the damages paid by Fisk to the Mills, Caldwell could never have got any part of it, because the Mills were under no liability on that account."

It must follow that defendant has done plaintiff no legal harm and has nothing to do with his contract with his shippers. Neither has plaintiff anything to do with the settlements between the shippers and the carriers.

It should also be noted that not only has plaintiff not sued on the theory of a tortious interference by the carriers with his contract right to commissions, but he has not even waived the tort to sue in assumpsit. He has not claimed commissions on the price the produce

would have fetched if undamaged but on the price they actually did bring after damage.

Plaintiff has sued under the Federal amendments but tries to push them beyond their clearly expressed limit of damage to the goods shipped. For Pennsylvania cases that discuss the amendment, see Robb v. American Railway Express Company, 78 Pa. Superior Ct. 1 (1921) ; Tentzer v. Reading Company, 101 Pa. Superior Ct. 238 (1930) ; Alwine et al. v. Pennsylvania Railway Company, 141 Pa. Superior Ct. 558 (1940). In the Alwine case, the court said that the amendments are not ambiguous; that "We may not assume an ambiguity for the purpose of applying auxiliary rules"; and that a statute in derogation of the common law should not be interpreted beyond its clear meaning and purpose.

The preliminary objections are sustained.