FIRST HARTFORD REALTY CORP. *vs.* CORPORATE PROPERTY INVESTORS. July 17, 1981. Westminster Associates, a limited partnership organized under Rhode Island law (the partnership), entered into a letter agreement on September 27, 1972, with Corporate Property Investors (CPI), a trust organized under New York law, whereby CPI would, at the partnership's option, purchase from the partnership the land under a twenty-two story office building in Providence, which the partnership was in the process of completing. When the partnership exercised its "put" in 1975, CPI declined to perform on the grounds that the partnership had not satisfied certain conditions of sale which appeared in the agreement, notably the achievement of a stipulated rent quota and the furnishing of certain financial information by the plaintiff in this action, First Hartford Realty Corporation (FHRC), a Delaware corporation. FHRC was the sole general partner of the partnership. The financial condition of FHRC was of interest to CPI because FHRC, as part of the deal structured by the 1972 agreement, was to guarantee the performance of a forty-five year lease-back by CPI to the partnership and a loan which CPI was to make to FHRC if the net income of the building had not reached a specified amount prior to the date of closing. Certain officers and employees of CPI were also to buy limited partner interests in the partnership.

FHRC, in its complaint, alleges that CPI repudiated its agreement with Westminster and implies the meretriciousness of the reasons advanced by CPI for failing to perform. The theories of recovery which the complaint articulates are breach of contract, a G. L. c. 93A claim of unfair business practices, and, on an imaginative reading of the complaint, claims under New York law of prima facie tort. During the course of a deposition, the defendant CPI discovered that the plaintiff FHRC had, as of September 30, 1976, i.e., eleven months after commencement of the action, resigned as the sole general partner of the partnership. CPI moved for summary judgment (Mass.R.Civ.P. 56, 365 Mass. 824 [1974]) on the ground that, on undisputed facts, FHRC had no standing to maintain the action. That motion was allowed. The parties agree that, in accordance with a provision in the September 27, 1972 agreement, the law of the State of New York is applicable.

1. As the sole general partner of Westminster Associates, FHRC was the appropriate plaintiff when the action began. *Gordon* v. *Medford,* 331 Mass. 119, 124 (1954). *Roberts-Haverhill Associates* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 721 (1974). Mass.R.Civ.P. 17(a), 365 Mass. 763 (1974). Smith & Zobel, Rules Practice § 17.8 n.30 (1980 Supp.). Once FHRC withdrew from the partnership, its ability to maintain the action, in the absence of an assignment of the claim by the partnership to FHRC (that no such assignment occurred is uncontroverted), depended on establishing its status as a third-party beneficiary. Third-party beneficiary rights have been recognized in New York since the leading case of *Lawrence* v. *Fox,* 20 N.Y. 268 (1859). But in order to invoke

the principle, the claimant must demonstrate that the contracting parties intended to benefit the third party and that the third party was not a mere incidental beneficiary. *Stainless, Inc.* v. *Employers Fire Ins. Co.*, 69 App. Div. 2d 27, 33 (1979), aff'd., 49 N.Y.2d 924 (1980). Indeed, the *Stainless* case says, "The intention to benefit the third party must appear from the four corners of the instrument." *Id.* at 33. Within the four corners of the September 27, 1972, agreement there is little comfort for FHRC. Status as sole general partner is no help; a member of a partnership may not recover by his individual suit on the partnership's rights. *Stevens* v. *St. Joseph's Hosp.*, 52 App. Div. 2d 722, 722 (N.Y. 1976). In that respect a partner is like a shareholder, who may not claim to be a third-party beneficiary of a contract made on behalf of the corporation in which he owns stock. See *Beveridge* v. *New York Elev. R.R.*, 112 N.Y. 1, 27 (1889). As to the detailed arrangements of the 1972 agreement, which are spelled out in more than seven single-spaced pages, none, as the trial judge observed, conferred any rights on FHRC. Thus, although the parties to a commercial triangle often do not leave clear fingerprints as to their intentions regarding third-party benefits (see Greaney, Contract-Counsel Fees — Third Party Beneficiary, 64 Mass.L. Rev. 179 [Oct. 1979]), the 1972 agreement stands as a substantial clue that CPI undertook no obligations to FHRC. To the degree that in some cases it may be appropriate to look to the commercial setting of the instrument to explain rights not definitely resolved by a writing, *American Elec. Power Co.* v. *Westinghouse Elec. Corp.*, 418 F.Supp. 435, 448-449 (S.D. N.Y. 1976), the materials filed are not susceptible to the divination of an obligation to perform any promise by CPI which was to flow to FHRC. That the flow of funds to the partnership would have redounded to the significant financial benefit of FHRC did not make FHRC anything better than an incidental beneficiary. See *Port Chester Elec. Constr. Corp.* v. *Atlas*, 40 N.Y.2d 652, 656 (1976); 4 Corbin, Contracts § 779D, at 43 (1951); Restatement (Second) of Contracts § 302, Illustration 3 (1981). See also *Tomaso, Feitner & Lane, Inc.* v. *Brown*, 154 N.Y.S.2d 699, 701-702 (Sup. Ct. 1956), rev'd. on other grounds, 3 App. Div. 2d 671 (1957), aff'd., 4 N.Y.2d 391 (1958); *Ogden Dev. Corp.* v. *Federal Ins. Co.*, 508 F.2d 583, 587-588 (2d Cir. 1974) (decided under Vermont law upon assumption that it would be identical to New York law).

2. On appeal, FHRC made a well advised decision to abandon its c. 93A claim (the exemption of the transaction from the coverage of G. L. c. 93A under § 3[1][b] could not, on the record, be disputed), but still urges that the c. 93A count should be read as stating claims, cognizable under New York law, of tortious breach of contract and prima facie tort. To the extent that New York recognizes tort liability arising out of a breach of contract, that liability is indistinguishable in the context of this case from the doctrine of prima facie tort. See 59 N.Y. Jur., Torts § 17, at 127-128 (1968). Assuming, without deciding, that the latter theory was

adequately pleaded, the materials offered by FHRC in support of summary judgment say no more than that CPI was fully aware that its failure to go through with the Providence transaction would embarrass FHRC financially. But the New York torts to which the plaintiff refers are "limited to those instances where the sole motivation for the damaging acts has been a malicious intention to injure the plaintiff." *Squire Records, Inc.* v. *Vanguard Recording Soc., Inc.*, 25 App. Div. 2d 190, 191 (1966), aff'd., 19 N.Y. 2d 797 (1967). The act complained of must be motivated by a purpose to injure the plaintiff. *Id.* See also *Danko* v. *F. W. Woolworth Co.*, 29 App. Div. 2d 855, 855-856 (N.Y. 1968); *Costlow* v. *Cusimano*, 34 App. Div. 2d 196, 200 (N.Y. 1970). Cf. *Burns Jackson Miller Summit & Spitzer* v. *Lindner*, 108 Misc. 2d 458 (N.Y. Sup. Ct. 1981). Whether CPI's reasons for failing to perform were genuine or contrived, nothing put forward by FHRC permits the conclusion that the failure had as its purpose the infliction of harm on FHRC.

*Judgment affirmed.*

*John C. Wyman* for the plaintiff.
*William H. Baker* for the defendant.