**FRONTIER MANAGEMENT CO., INC., et al., Plaintiffs,**

v.

**BALBOA INSURANCE COMPANY, et al., Defendants.**

Civ. A. No. 85–4220–S.

United States District Court, D. Massachusetts.

Dec. 2, 1985.

James E. Grumbach, Morrison, Mahoney & Miller, Boston, Mass., for plaintiffs.

Jeffrey Swope, Palmer & Dodge, Boston, Mass., for defendants.

### MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

SKINNER, District Judge.

In this diversity action, plaintiffs seek to enjoin the defendants from terminating a managing general agency agreement ("MGA Agreement"). On November 13, 1985, I issued an *ex parte* temporary restraining order preventing the defendants from cancelling the MGA Agreement, and on November 20, 1985, a hearing was held on plaintiffs' motion for a preliminary injunction.

Briefly, this dispute concerns the decision by defendants Balboa Insurance Company, Meritplan Insurance Company and Newport Insurance Company (collectively "Balboa") to get out of the taxi and related nonstandard automobile insurance business. Since 1983, Balboa has provided liability insurance for taxis, limousines, non-emergency medical vehicles, airport vans

and social service vehicles (the "Public Transportation Program") in 48 states. Balboa operates as a "fronting" company in providing this insurance. As the fronting company, Balboa receives a percentage of the premiums for insurance written under the Public Transportation Program. However, the Program is administered by a managing general agent, originally Southern Underwriting Managers, Inc., pursuant to the MGA Agreement, and all risk of loss for the insurance issued under the Program is transferred to Balboa's reinsurer, Omaha Indemnity, pursuant to a Reinsurance Agreement.

On June 28, 1984, Southern Underwriting Managers, Inc. assigned the rights and liabilities under the MGA Agreement to plaintiff Frontier Management Co., Inc. ("Frontier"). The assignment was accepted by Balboa on December 21, 1984. As managing general agent, Frontier actually underwrites and produces the insurance policies, binds the risks, sets the rates, handles and pays claims, appoints producers (agents and brokers), and collects the premiums. Pursuant to the MGA Agreement, Frontier acts as managing general agent in 48 states, including Massachusetts. Although one of Frontier's agents and brokers, plaintiff Jacques and Company Insurance Agency, Inc. ("Jacques"), is a licensed insurance agent in Massachusetts, Frontier is not licensed. Frontier has no business other than the Public Transportation Program.

On September 9, 1985, Balboa notified Frontier that, due to "changes in direction and philosophy", the MGA Agreement would be terminated effective December 31, 1985. Since September 9, Frontier has been unsuccessfully attempting to find a substitute fronting company. This action was filed on November 12, 1985.

Plaintiffs seek a preliminary injunction requiring Balboa to continue the Public Transportation Program until they find a replacement fronting company. In essence, they claim that defendants did not provide enough notice of the cancellation. The MGA Agreement, ¶ 11, requires 90 days' notice before termination other than

for cause. Balboa actually gave Frontier 112 days' notice of the intended cancellation.

To obtain a preliminary injunction, a plaintiff must demonstrate:

(1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981), quoting *Women's Community Health Ctr., Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979). I find that, while the three other requirements may have been satisfied, plaintiffs have not demonstrated a likelihood of success on the merits of their claims so as to warrant the requested injunction. Accordingly, the motion for a preliminary injunction must be denied in great part.

In the complaint, plaintiffs set forth six causes of action: breach of contract, promissory estoppel, defamation, and violation of various provisions of M.G.L. c. 175. For reasons which will become apparent, the hearing on the preliminary injunction focused upon the alleged statutory violations, and I will begin discussion with them.

■ Plaintiffs' strongest claim that the notice was inadequate despite the fact that it apparently satisfied the requirements of the MGA Agreement is that the notice was less than the 180 days required by M.G.L. c. 175, § 163, which provides, in pertinent part:

No company shall cancel the authority of any independent insurance agent for ... casualty insurance ... if said agent is not an employee of said company ... unless the company gives written notice of its intent to cancel ... at least one hundred and eighty days before the pro-

posed effective date of such cancellation
...

\*    \*    \*    \*    \*    \*

Any insurance company and any insurance agent may by written contract agree to modify the provisions of the preceding two paragraphs, other than the requirement of a one-hundred-eighty day notice in the event of a cancellation ...

However, as defendants argue, it seems unlikely that this section applies to the instant situation. Section 163 is not specific, but it apparently pertains to the situation in which an insurance company switches from one agent to another rather than a situation, like the instant case, where an insurance company stops writing a line of insurance. This is apparent from the remedy provided by the statute. A terminated agent may seek reference to referees who will make a finding regarding

whether or not such cancellation ... will so affect the renewal, continuation or replacement of any policies placed with the company through the efforts of the agent, or the services needed by any policyholder doing business with the company as a result of the efforts of the agent, as to justify renewal or continuation of any policies then in effect having been placed with such company by such agent.

M.G.L. c. 175, § 163. In other words, the referees must determine whether cancellation of the agency relationship will have an effect on the continued policies. If the referees find the required effect, the affected policies must be renewed and the cancelled agent given compensation for an additional year. *Id.* In this case, all policies will terminate on December 31, 1985, so the situation contemplated by § 163 does not exist and the section does not apply.

■ Further, § 163 does not apply to this case because it applies solely to agreements between licensed insurance agents and insurance companies. Frontier is not a licensed insurance agent. Plaintiffs allege that plaintiff E. Cooper Jacques assigned his insurance agency license to Frontier.

Neither party has cited any persuasive authority relating to the validity of such an assignment, but the language of § 163 indicates that an agent's license is personal and cannot be assigned. In light of the above, I conclude that it is unlikely that Frontier will succeed in demonstrating that § 163 applies to this case.

■ Plaintiffs next argue that M.G.L. c. 175, § 193R, which prohibits an insurer from modifying the rates applicable to certain group marketing plans, prevents Balboa from cancelling the program. The first question is whether § 193R applies. The section only covers "motor vehicle insurance", defined as

any policy of insurance or bond as defined in section thirty-four A of chapter ninety or described in this chapter insuring private passenger vehicles for individuals.

M.G.L. c. 175, § 193R. The parties differ in their reading of this definition as to whether the phrase "insuring private passenger vehicles for individuals" modifies both the "policies ... defined in section thirty-four A of chapter ninety" and "described in this chapter". I would read it to modify both phrases, thus possibly barring application of the section to a program of insurance for commercial taxis and limousines, which may not be considered "private passenger vehicles". However, the Massachusetts Division of Insurance has opined that the Continental Transportation Association, Inc., an association of taxicab and truck owners insured through the Public Transportation Program, is an association which may purchase a group policy on behalf of its members under § 193R. *See* Letter from Victor A. Fanikos, Counsel, Massachusetts Division of Insurance, to David M. Donovan, Vice President, Jacques & Company Insurance Agency, Inc. (November 8, 1983). I need not decide this question because the portion of § 193R which is alleged to apply to this case only states that

every insurer providing insurance in accordance with this section shall keep ... data on the losses and expenses ... and

shall not be allowed to offer any such insured a modification of the rates so fixed ... unless data on such losses and expenses for at least three policy years shows ... that such modification is in fact justified.

M.G.L. c. 175, § 193R. This section does not purport to prevent a party from cancelling the group insurance, a possibility which is explicitly mentioned in the paragraph preceding the quoted language. The plaintiff has not demonstrated a reasonable likelihood that this section applies.

■ Plaintiffs also assert the defendants have violated M.G.L. c. 175, §§ 22H and 113F. Defendants have acknowledged that § 22H applies. As Balboa has not requested that the Commissioner of Insurance make a written determination that its refusal to issue new motor vehicle insurance policies is "justifiably required to protect the solvency" of the company, as required by the statute, it seems very likely that Balboa will be in violation of the statute on January 1, 1986, the effective date of non-renewal. See Maryland Casualty Co. v. Commissioner of Insurance, 372 Mass. 554, 560, 363 N.E.2d 1087 (1977). However, § 22H provides an express remedy when an insurer refuses to write motor vehicle liability policies without the requisite written determination: following a hearing and findings that the refusal was not justified by protection of solvency and is contrary to the public interest, the Commissioner

shall suspend such company's licenses to issue or sell any other form of insurance within the commonwealth until such company resumes the issuance or renewal of motor vehicle liability policies ...

M.G.L. c. 175, § 22H. The Supreme Judicial Court has determined that the sole sanction for violation of § 22H is that provided in that section. Maryland Casualty

Co. v. Commissioner of Insurance, 372 Mass. at 570–571 and n. 16, 363 N.E.2d 1087. Although the Maryland Casualty decision concerned the application of other sanctions in proceedings before the Commissioner, not in a private action, it is likely that the same reasoning controls and bars granting other relief under § 22H in this case. I note that the section does not require prior approval of the cancellation by the Commissioner.

■ Section 113F requires that any insurance company

which does not intend to issue, extend or renew a motor vehicle liability policy ... shall, if said policy ... is in full force and effect forty-five days prior to the termination date of the policy, give written notice of its said intent on or before the aforesaid forty-fifth day.... Such notice shall ... be sent to the registrar of motor vehicles ... and shall also be sent either to said insured or to the insurance agent of the company ... who negotiated the issue of the policy....

\*       \*       \*       \*       \*       \*

Any company failing to send notice ... shall, upon request of such insured ..., issue a new policy ... as to at least the amount of coverages provided by the expiring policy ... and shall recognize the agent ... designated by the insured in the same manner as provided by any contract, custom, or usage then in effect between such agent ... and such company.

M.G.L. c. 175, § 113F. Balboa apparently has not sent any such notice.[1] The remedy provided by the section, however, must be sought by the insured, not by an agent or by a managing agent—a role not referred to in the statute. Plaintiffs thus cannot use this statute as a basis for a claim. Should an insured later seek a renewal of its insurance under this provision, Balboa

---

1. Balboa claims that its September 9, 1985, letter gave "in excess of 90 days' notice, more than adequate to comply with section 113F". Defendants' Memorandum at 9. However, § 113F requires that the notice shall be sent to either the insured or the licensed insurance agent who executed the policy in question. As defendants have argued with reference to § 163, Frontier is not a licensed insurance agent. Defendants do not claim to have sent notice to Jacques. In this situation, the statute may require the insurer to send notice to the insureds in the standard form prescribed by the Commissioner. M.G.L. c. 175, § 113F.

may have to become an insurer in fact, rather than a mere fronting company.

■ In light of the above, I conclude that plaintiffs have not shown a reasonable likelihood of succeeding on the merits of their statutory claims. The breach of contract and promissory estoppel claims may be more briefly disposed of. Plaintiffs' claim for breach of contract requires that the 180–day notice requirement of M.G.L. c. 175, § 163 be read into the MGA Agreement, which only provides for 90 days' notice. I have already held that § 163 probably does not apply to this case. Accordingly, it may not be read into the MGA Agreement. The promissory estoppel claim is based on representations allegedly made at a meeting of Balboa managing general agents held in the spring of 1985. *See* Affidavit of Irwin C. Keightly, Jr., ¶ 6. Frontier alleges that in reliance on this unspecified long term commitment to the program, it expanded its insurance operations in 1985 far beyond those of 1984. However, this detrimental reliance does not provide the basis for a preliminary injunction requiring continuation of the program into the future. The resulting extra expenditure may be compensated for in a damage award.

Plaintiffs' final claim is for defamation by "false statements, misrepresentations and disparaging comments". Complaint ¶ 34. Plaintiffs specifically allege that defendants have falsely stated that the Program was unprofitable and the losses understated. Complaint ¶ 35. In addition, they claim that defendants have refused to provide certain information and fair references on Frontier's behalf. Complaint ¶¶ 36, 37. This allegation is supported by a letter dated October 21, 1985 from Robert J. Lindquist, Executive Vice President of Balboa, to David M. Donovan of Frontier. Keightly Affidavit, Exhibit D. In order for Frontier to obtain a replacement carrier, Balboa must provide two pieces of information to potential replacement carriers: that it was acting only as a fronting company and that Frontier made all payments due in a timely manner. Affidavit of David M.

Donovan ¶ 7, Exhibit B; Keightly Affidavit ¶ 8.

■ While plaintiffs have stated a cause of action for defamation, *see Mabardi v. Boston Herald Traveler Corp.*, 347 Mass. 411, 198 N.E.2d 304 (1964), the lack of specificity with regard to the allegedly defamatory comments and the persons to whom they were made bars entry of the broad injunction requested by plaintiffs. It is not reasonably likely that plaintiffs will prevail on all parts of their claim of defamation. However, the defendants' allegedly false statements concerning the profits and losses under the Program are sufficiently specific and ascertainable to warrant an injunction. Defendants' refusal to provide information to potential replacement carriers is an unfair business practice and also merits relief. The injury to plaintiffs' search for a replacement carrier by such statements and refusals is clearly irreparable; requiring accurate statements in these areas will not harm defendants; and the public interest will be served by an injunction which will ease the task of finding a replacement carrier.

Accordingly, the temporary restraining order entered on November 13, 1985 is VACATED. Defendants are enjoined from making false statements that the Program was unprofitable and the losses understated and are required to provide potential replacement carriers who request information with accurate information about Balboa's role in the Program and whether Frontier made payments due in a timely manner. Plaintiffs' motion for a preliminary injunction is otherwise DENIED.