**FRONTIER MANAGEMENT CO., INC.**
**et al., Plaintiffs,**

**v.**

**BALBOA INSURANCE CO., et**
**al., Defendants.**

Civ. A. No. 85–4220–S.

United States District Court,
D. Massachusetts.

Dec. 30, 1986.

988

James E. Grumbach, Morrison, Mahoney Miller, Boston, Mass., for plaintiffs.

Steven L. Schreckinger, William L. Lay, John T. Harding, Jr., Palmer & Dodge, ston, Mass., for Balboa Ins. Co.

Robert Murphy, Casner, Edwards & seman, Boston, Mass., for Omaha In-m. Co.

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO DISMISS THE COUNTERCLAIM OF THE OMAHA INDEMNITY COMPANY

SKINNER, District Judge.

This is a motion to dismiss the counterclm filed by The Omaha Indemnity Compy ("Omaha"). Background relevant to tł litigation is set forth in my opinion at 6! F.Supp. 1016, 1017–1018 (D.Mass.1985). In that opinion, I denied the motion of the plaintiffs, Frontier Management Company, Inc. ("Frontier"), Jacques and Company Insurance Agency, Inc., E. Cooper Jacques, Patricia A. Jacques, Robert E. Osmundsen and Irwin C. Keightly, Jr. (the last five collectively referred to as "individual plaintiffs") for a preliminary injunction against Balboa Insurance Company, Inc. ("Balboa") and other defendants which would have required Balboa to continue acting as an insurance fronting company for a program of taxicab and limousine insurance managed by Frontier. My order permitted Balboa to cancel as of December 31, 1985 the Managing General Agency agreement ("MGA agreement") which authorized Frontier to issue policies on which Balboa was the named insurer.

Despite Balboa's cancellation of the agreement, Frontier continued after December 31, 1985 to write policies naming Balboa as the insurer. On April 24, 1986, I enjoined Frontier, Jacques and their agents, employees, and officers from issuing policies naming Balboa as the insurer. I also ordered Frontier to return all blank forms it had received from Balboa.

The plaintiffs amended their complaint some time thereafter to add Omaha as a defendant. The amended complaint alleges that Omaha acted as the reinsurer of all policies written pursuant to the MGA agreement, and that Balboa's termination of the MGA agreement was the result of Omaha's refusal to continue acting as reinsurer for the program.[1]

Omaha has filed a counterclaim against Frontier and against the individual plaintiffs, each of whom was an employee, officer, agent or principal of Frontier. The counterclaim alleges that Frontier wrongfully exposed Omaha to excessive risk and withheld premiums belonging to Omaha. The plaintiffs have moved to dismiss all nine counts of the counterclaim under Fed. R.Civ.P. 12(b)(6).

---

[1] I note that Omaha disputes that it is the reinrer of policies written by Frontier pursuant to ε MGA agreement. Balboa and Omaha have bmitted this issue to arbitration. Omaha's cunterclaim is submitted on the assumption that Omaha will be determined to be liable for reinsurance on some or all the policies written by Frontier for Balboa. See Fed.R.Civ.P. 8(e). I proceed on the same assumption and do not make any finding as to that issue.

In assessing the merits of plaintiffs' motion to dismiss, I must assume that the facts alleged by Omaha are true, and I must view those facts in the light most favorable to Omaha. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Harper v. Cserr,* 544 F.2d 1121 (1st Cir.1976). I may grant the motion only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–2, 2 L.Ed.2d 80 (1957); *Walgren v. Howes,* 482 F.2d 95, 99 (1st Cir.1973); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). Applying these guidelines, I find the motion to dismiss without merit and deny the motion as to all counts.

*Count I*

In Count I of the counterclaim, Omaha alleges that the plaintiffs breached their fiduciary duties to Omaha. The plaintiffs argue that the count must be dismissed in its entirety because Frontier owed no fiduciary duty to Omaha. In addition, plaintiffs contend that Count I must be dismissed as to the individual plaintiffs because any fiduciary duty that exists must derive from the MGA agreement, and the individual plaintiffs were not parties to that agreement.

■■■ Whether Frontier owed any fiduciary duties to Omaha is a factual question. *See, e.g., Broomfield v. Kosow,* 349 Mass. 749, 755, 212 N.E.2d 556 (1965). The mere fact that Omaha and Frontier were sophisticated parties involved in a business relationship does not preclude the existence of a fiduciary relationship between them. While an arms length business relationship generally will not give rise to fiduciary duties, if one of the parties is an agent of the other, the agent will be a fiduciary with respect to all matters within the scope of his agency. *United States v. Drumm,* 329 F.2d 109, 112 (1st Cir.1964) (quoting *Restatement (Second) of Agency,* § 13 (1958)); *accord, e.g., Mackey v. Rootes Motors, Inc.,* 348 Mass. 464, 467–468, 204 N.E.2d 436 (1965); *Rayden Engineering Corp. v. Church,* 337 Mass. 652, 660, 151

N.E.2d 57 (1958). Omaha has alleged t Frontier had full control over the mana ment of the insurance program. It alle that Frontier made underwriting and r setting decisions, reported premiums w ten, risks undertaken, losses claimed : losses paid, and handled and administe claims. These allegations, if proven at al, might be sufficient to establish t Frontier acted as Omaha's agent. This i tual dispute should be resolved at trial : not on a motion to dismiss.

The individual plaintiffs may owe Omi fiduciary duties derived from those Frontier. *See Rayden,* 337 Mass. at € 151 N.E.2d 57. Under Massachusetts l: regular employees of an agent may th selves be subagents standing in a fiduci relation toward a principal, and the s agents may be subject to all the liabili; of the agent "except liability depend upon the existence of a contractual r: tionship between them." *Id.* The indivi al plaintiffs are alleged to have been eit employees of Frontier or a principal : "alter ego" of the company. Hence th all may be found to be subagents of Fr tier. And Frontier's fiduciary duties wards Omaha, if any, may be independt of the MGA agreement. For exam, Frontier may have owed Omaha a fiduci duty based upon the course of dealing tween Frontier and Omaha after the : tract was cancelled on December 31, 1S. There seems to me to be a genuine issuef fact regarding the existence of a fiduciy relationship between Omaha and the ii vidual plaintiffs.

Accordingly, plaintiffs' motion to disrs Count I of the counterclaim is DENI).

*Count II*

Plaintiffs move to dismiss Count II io far as it applies to the individual plaint's. Count II by its terms applies only to Fn tier. The motion is therefore moot. accordingly, plaintiffs' motion to disiss Count II of the counterclaim is DENID.

*Count III*

■ Plaintiffs move to dismiss Cint III, which alleges negligence by the pin tiffs, insofar as it applies to the indivial plaintiffs. They contend that Omahaias

failed to allege that the individual plaintiffs were personally involved in Frontier's alleged negligence.

Under Massachusetts law, corporate officers are personally liable for any tortious activity in which they personally participate. *LaClair v. Silberline Manufacturing Company, Inc.*, 379 Mass. 21, 29, 393 N.E.2d 867, 872 (1979). *See also Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir.1980) (quoting *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 260 (1st Cir.1962)). Omaha's counterclaim alleges that the individual plaintiffs are the alter ego, officers or employees of Frontier. It further alleges that

Frontier and the other counterclaim defendants [i.e., the plaintiffs], and each of them, failed to observe standards of ordinary care and professional competence in underwriting, by purporting to bind Balboa and its reinsurers to policies reflecting extremely poor risks.... Examples of such improper underwriting include, without limitation, the following:

\* \* \* \* \* \*

(b) Frontier, the other counterclaim defendants and various subproducers for whose acts Frontier is liable conducted wholly inadequate investigations regarding risks to be underwritten;

\* \* \* \* \* \*

(d) In a number of situations, Frontier and the other counterclaim defendants and their subproducers, for whose acts they are liable, have bound Balboa to policies purporting to cover one fleet of cabs when in fact Frontier and the other counterclaim defendants have issued certificates under such policies extending additional coverage to other cab companies for individual cabs, or other additional insureds, which were not part of the actual company or fleet for whom the master policy was issued ...;

(e) On information and belief, Frontier and the other counterclaim defendants have also engaged in practices whereby a company or fleet of cabs would be insured with a premium based on a certain number of cabs, when in fact the company or fleet at different times operated a significantly greater number of cabs ...;

(f) After receiving notice in September, 1985 that their agency and authority to act for Balboa would terminate effective December 31, 1985, Frontier and the other counterclaim defendants engaged in a concerted effort to underwrite as much additional business as possible, however poor the risk, to extend all existing policies to the greatest extent feasible and generally to generate the largest amount of premiums possible, regardless of the risk to Balboa and any reinsurers, and regardless of their actual knowledge that Balboa and any reinsurers did not want to assume any more risk....

(g) Additionally, after their authority had been terminated, Frontier and the other counterclaim defendants continued during 1986 to attempt to bind Balboa, and any possible reinsurers, to new unwanted and unauthorized risks ...; and

(h) On information and belief, Frontier and the other counterclaim defendants have caused certain policies and certificates to be back dated so as to appear to have been written in the time in which Frontier had the authority to act on behalf of Balboa.

15. In addition, Frontier and the other counterclaim defendants have engaged throughout the existence of the program in inaccurate, inadequate and false reporting regarding the policies in effect, the amount of premiums due and collected, the losses claimed and paid, and other aspects of the program underwritten and overseen by Frontier and the other counterclaim defendants.

16. The handling and administration of claims handling by Frontier and the other counterclaim defendants has been grossly inadequate, including, without limitation, improper claims investigation, inexcusable delays in payment of valid claims, situations in which claims have been paid in excess of apparent policy limits, all to the great detriment of Balboa and any possible reinsurers.

As these paragraphs make clear, Omaha has alleged personal participation by the

individual plaintiffs in numerous negligent activities by Frontier.

Accordingly, plaintiffs' motion to dismiss Count III of the counterclaim is DENIED.

*Count IV*

In Count IV, Omaha alleges that the plaintiffs committed professional malpractice. The plaintiffs move to dismiss this count as to the individual plaintiffs on the grounds that Omaha has claimed only possible, rather than actual, losses due to their conduct, and on the grounds that Omaha's counterclaim fails to show that the individual plaintiffs' alleged malpractice proximately caused Omaha's loss.

■ Omaha need not prove its case at the pleading stage. Under the federal rules, a counterclaim need only set forth "a short and plain statement of the claim." Fed.R.Civ.P. 8(a). While at trial Omaha must prove actual losses proximately caused by the activities of the individual counterclaim defendants, at the pleading stage, it need only state in general terms the activities complained of and the harm suffered. Omaha has alleged that the individual counterclaim defendants took part in a large number of wrongful or negligent activities which increased Omaha's exposure to risk and reduced the premium payments it has received. These allegations are sufficient to satisfy the pleading requirements of Rule 8.

Accordingly, plaintiffs' motion to dismiss Count IV of the counterclaim as to the individual plaintiffs is DENIED.

*Count V*

■ Plaintiffs move to dismiss Count V, which accuses Frontier and the individual plaintiffs of fraudulent misrepresentation, for failure to plead the circumstances of the alleged fraud with sufficient particularity. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Omaha's counterclaim alleges that:

17. Frontier and the other counterclaim defendants [i.e., the plaintiffs], in order to induce Balboa and any possible reinsurers to enter the Frontier taxicab program, made specific representations to Balboa and to Omaha Indemnity, through its agents:

(a) that the books of business which had been written and would be written by Frontier and the other counterclaim defendants were sound and profitable;

(b) that Frontier and the other counterclaim defendants were qualified and competent to handle the underwriting and claims handling responsibilities under the program;

(c) that Frontier and the other counterclaim defendants would take all necessary actions to protect the interests of Balboa and any possible reinsurers;

(d) that all reports presented by Frontier and the other counterclaim defendants to Balboa and any possible reinsurers were and would continue to be complete and accurate; and

(e) other assurances.

18. The foregoing representations were false, were known by Frontier and the other counterclaim defendants to be false, and were made by them with an intent to induce reliance by Balboa and possible reinsurers. Balboa and Omaha Indemnity, to the extent Omaha Indemnity has any reinsurance obligations in connection with this program, relied on such misrepresentations and have been greatly damaged thereby.

These pleadings are sufficient to satisfy the purposes underlying Rule 9(b). *See McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 229 (1st Cir.1980). They provide the counterclaim defendants with adequate notice of the basis for Omaha's allegations of fraud, and they are sufficiently particular to suggest that Omaha is not engaged in a frivolous suit.

It would be unfair to require Omaha to supply more information at this stage. Much of the relevant evidence is in the hands of defendant Balboa, and Balboa and Omaha are adverse parties in a related dispute regarding Omaha's liability as reinsurer of the policies written by Frontier. Omaha has alleged the specific substance of the alleged misrepresentations. Because information about the time and place

of the alleged misrepresentations is in the hands of an adverse third party, Omaha need not provide those particulars at the pleading stage. *See generally* 5 Wright & Miller, *Federal Practice and Procedure: Civil,* § 1298. I find that Omaha's pleadings are sufficiently particular to satisfy the pleading requirements of Rule 9(b).

■ Plaintiffs offer a second argument in support of their motion to dismiss Count V. Omaha, they argue, has failed to allege any reliance upon their alleged misrepresentations. They contend that because Omaha entered the taxicab insurance program before Frontier was formed, plaintiffs' alleged misrepresentations could not have induced Omaha to enter the program. However, Omaha alleges not that their misrepresentations caused it to enter the taxicab insurance program in 1983, but that their misrepresentations caused it to enter the "Frontier taxicab insurance program." The original manager of the taxicab insurance program assigned the MGA agreement to Frontier in 1984. The assignment was apparently contingent upon the approval of the insurers. The alleged misrepresentations of the plaintiffs may have been an important factor in the insurers' decision to approve the assignment, and hence could have been instrumental in inducing Omaha to enter into the taxicab insurance program as administered by Frontier.

■ Plaintiffs also move to dismiss Count V as to the individual plaintiffs. They argue that Omaha has failed to allege that the individual plaintiffs were "a moving, active conscious force" behind the corporation's fraudulent activities. However, corporate officers may be liable for their own fraudulent misrepresentations, and they are not protected merely because those representations were made while they were acting in their official corporate capacities. *Bond Leather Company, Inc. v. Q.T. Shoe Manufacturing Company, Inc.,* 764 F.2d 928, 938 (1st Cir.1985). Omaha has alleged that fraudulent misrepresentations were made by Frontier *and* the individual plaintiffs. Thus, Omaha has adequately alleged Count V as to the individual plaintiffs, regardless of whether the allegations show that they were a "moving, active conscious force" behind Frontier's misrepresentations.

I find Omaha's Count V sufficient to state a claim in all respects. Accordingly, plaintiffs' motion to dismiss Count V of the counterclaim is DENIED.

*Count VI*

■ Count VI is an action for money had and received. Plaintiffs move to dismiss this count as to the individual plaintiffs on the grounds that Omaha has failed to allege that they obtained any moneys belonging to Omaha. Omaha need only plead that the individual plaintiffs "obtained money under such circumstances that in equity and good conscience it should be returned." *Suncook Mills v. U.S.,* 44 F.Supp. 744, 747 (D.Mass.1942) (citing cases). Count VI alleges specifically that "Frontier and the other counterclaim defendants have had and received monies which belong to Balboa and its possible reinsurers" (emphasis supplied). The counterclaim alleges circumstances which, if true, would warrant a court finding that the individual plaintiffs hold money which in equity and good conscience should be turned over to Omaha. In this respect, Count VI is adequately pleaded.

In addition, plaintiffs move to dismiss Count VI as to the individual plaintiffs on the ground that because they were not parties to the MGA agreement they cannot be liable for moneys had and received pursuant to the contract. An action for moneys had and received is not, however, an action on the contract. It is an equity action aimed at restoring wrongfully obtained moneys to the rightful owner, regardless of how that money was obtained or what the basis of the rightful owner's claim might be. *See Stone v. White,* 301 U.S. 532, 534, 57 S.Ct. 851, 852, 81 L.Ed.2d 1265, *reh'g denied,* 302 U.S. 777, 58 S.Ct. 260, 82 L.Ed. 601 (1937); *accord Stone & Webster Engineering Corporation v. The First National Bank & Trust Company of Greenfield,* 345 Mass. 1, 4, 184 N.E.2d 358 (1962). Lack of contractual privity between the parties will not bar the action.

*See Rabinowitz v. People's National Bank,* 235 Mass. 102, 103, 126 N.E. 289 (1920); *accord Flower v. Suburban Land Company, Inc.,* 332 Mass. 30, 33, 123 N.E.2d 218 (1954); *Flavin v. Morrissey,* 327 Mass. 217, 220, 97 N.E.2d 643 (1951). Omaha's action for money had and received is not barred as to individual plaintiffs merely because they were not parties to the MGA agreement.

Accordingly, plaintiffs' motion to dismiss Count VI of the counterclaim is DENIED.

*Count VII*

■ Count VII seeks to recover from the plaintiffs for unjust enrichment. Plaintiffs move to dismiss the count as to the individual plaintiffs on two grounds. First, they argue that Omaha's counterclaim is insufficient because Omaha "makes no showing that its contractual remedies are inadequate." Omaha need not make such a showing at the pleading stage; in fact, it may allege different and even inconsistent theories of recovery. *See* Fed.R.Civ.P. 8(e). It may therefore allege unjust enrichment merely on the possibility that its other claims will prove inadequate at trial. It need not show the inadequacy of other possible claims at this time. Moreover, as the plaintiffs have repeatedly pointed out, the individual plaintiffs have never executed a contract with Omaha, and Omaha does not assert any contractual claims against them. Hence, as to them, it is clear that Omaha has no adequate contractual claims.

■ The plaintiffs also argue that Omaha has failed to allege that the individual plaintiffs were unjustly enriched. But Omaha alleges that:

> Frontier and the other counterclaim defendants [i.e., the plaintiffs] have taken enormous sums of money in purported commissions from the program, without regard to their principal to underwrite and administer the program, and they have thereby subjected Balboa and any possible reinsurers to enormous liability without any corresponding benefit

> \* \* \* \* \* \*

> ... Frontier and the other counterclaim defendants have greatly enriched themselves as a result of unauthorized, improper use of apparent authority to bind Balboa and its possible reinsurers to risks.

This pleading clearly alleges unjust enrichment by the defendants, and is sufficient to meet the pleading requirements of Rule 8.

Accordingly, plaintiffs' motion to dismiss Count VII of the counterclaim is DENIED.

*Count VIII*

■ Plaintiffs move to dismiss Count VIII, which states a cause of action in prima facie tort, on the grounds that Omaha cannot "meet its burden of proving actual malice or malevolence." As I have repeatedly pointed out, Omaha need not prove its case at the pleading stage. It is clear that Omaha has alleged facts which, if proven at trial, would be sufficient to show actual malice. Omaha has alleged that the plaintiffs intentionally and wrongfully wrote unauthorized insurance, withheld premiums due to Omaha, purposely wrote excessive amounts of insurance and committed Omaha to excessive risks. Omaha further alleges that:

> Frontier and the other counterclaim defendants engaged in acts, some of which may otherwise have been legal, but which were done by the counterclaim defendants with the specific intent to injure Omaha Indemnity. These specific acts ... were engaged in by counterclaim defendants without justification, solely for the purpose of attempting to enrich the counterclaim defendants....

Even if, as plaintiffs contend, prima facie torts are "limited to those situations where the *sole* motivation for the damaging acts has been a malicious intention to injure plaintiff," *First Hartford Realty Corp. v. Corporate Property Investors,* 12 Mass. App.Ct. 911, 913, 423 N.E.2d 1020 (1981) (discussing New York law), Omaha's pleadings are adequate to state a cause of action.

Accordingly, plaintiffs' motion to dismiss Count VIII of the counterclaim is DENIED.

*Count IX*

 Count IX is a claim for civil conspiracy. Plaintiffs move to dismiss Count IX on the grounds that Omaha fails to allege that the plaintiffs possessed "a peculiar power of coercion" or that "the mere force of numbers" made a wrong. As plaintiffs themselves point out, however, an action in conspiracy may lie "where mere force of numbers acting in unison *or other exceptional circumstances* may make a wrong." *DesLauries v. Shea*, 300 Mass. 30, 33, 13 N.E.2d 932 (1938) (emphasis supplied). Among the exceptional circumstances that may provide the basis for a civil conspiracy claim is the existence of a fiduciary relationship among the parties. *See Loughery v. Central Trust Co.*, 258 Mass. 172, 176, 154 N.E. 583 (1927). Omaha has adequately alleged the existence of a fiduciary relationship between Omaha and the plaintiffs. Omaha's failure to plead that the plaintiffs possessed a "peculiar power of coercion" or that mere force of numbers made a wrong is not therefore fatal to Count IX.

Accordingly, plaintiffs' motion to dismiss Count IX of the counterclaim is DENIED.

*Conclusion*

The plaintiffs' motion to dismiss the counterclaim filed by Omaha Indemnity Company is DENIED in its entirety.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO DISMISS THE AMENDED COUNTERCLAIM OF BALBOA INSURANCE COMPANY, MERITPLAN INSURANCE COMPANY AND NEWPORT INSURANCE COMPANY

Plaintiff Jacques and Company Insurance Agency ("Jacques") and plaintiffs E. Cooper Jacques, Patricia A. Jacques, Robert E. Osmundsen, Irwin C. Keightly, Jr. and David M. Donovan (collectively the "individual plaintiffs") move to dismiss the counterclaim filed by defendants Balboa Insurance Company, Meritplan Insurance Company, and Newport Insurance Company (collectively the "Balboa Insurance Group" or "Balboa"). The background of this litigation is set forth in the opinion at 622 F.Supp. 1016, 1017–1018 (D.Mass.1985). In that opinion, I denied the motion of plaintiffs for a preliminary injunction requiring the Balboa Insurance Group to continue acting as an insurance fronting company under a Managing General Agency agreement (the "MGA agreement") between Balboa and Frontier Management Co. ("Frontier"). Cancellation of the MGA agreement was to be effective as of December 31, 1985. But despite Balboa's effective cancellation of the MGA agreement, Frontier continued to write insurance under the MGA agreement into 1986. On April 24, 1986, I enjoined Frontier, Jacques, and their agents, officers and employees from issuing policies on which Balboa was the named insurer. I also ordered Frontier to return all blank forms it had received from Balboa.

Shortly thereafter, Balboa filed an amended counterclaim seeking damages from Frontier, Jacques and the individual plaintiffs for premium payments withheld by Frontier from Balboa, other damages arising from Frontier's writing of insurance policies after December 31, 1985, and treble damages for the use of unfair and deceptive business acts and practices in violation of Mass.Gen.Laws c. 93A, § 11. Jacques and the individual plaintiffs move to dismiss the counterclaim for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Frontier has not moved for dismissal.

I may dismiss Balboa's counterclaim for failure to state a claim only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Walgren v. Howes*, 482 F.2d 95, 99 (1st Cir.1973); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985). In evaluating the sufficiency of the counterclaim, I must construe the allegations in the counterclaim favorably towards Balboa. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Following these guidelines, I find Counts II and IV of Balboa's counterclaim sufficient to withstand the

motion to dismiss. Count I must be dismissed insofar as it applies to Jacques and the individual plaintiffs. Count III must be dismissed in its entirety.

*Count I*

■ In Count I, Balboa alleges that Frontier and the individual plaintiffs breached the MGA agreement by failing to remit premium payments due Balboa, failing to follow Balboa's instructions to turn over files and underwriting information and by continuing to issue policies without authority. The individual plaintiffs contend that this count must be dismissed as to them because they were not parties to the contract and hence could not have breached it.

There is no suggestion in the pleadings or in any of Balboa's submissions that the individual plaintiffs were parties to the contract between Frontier and Balboa. The individual plaintiffs did not sign in their individual capacity either the MGA agreement or the documents assigning the agreement from Southern Underwriting Managers, Inc. to Frontier. The contract was assigned not to the individual plaintiffs but to Frontier. Individual plaintiffs were thus not parties to the MGA agreement, and I therefore find no grounds upon which the individual plaintiffs could be held liable for breach of contract.

Accordingly, insofar as Count I of the counterclaim alleges breach of contract by the individual plaintiffs, the motion to dismiss is ALLOWED.

*Count II*

■ In Count II, Balboa alleges that the individual plaintiffs tortiously interfered with contractual relations between Balboa and Frontier by directing Frontier to issue insurance policies under the MGA agreement after the agreement expired on December 31, 1985 and by directing it to refuse to turn over records, forms and premium payments sought by Balboa, all in violation of the terms of the MGA agreement. The individual plaintiffs contend that they acted in their capacity as employees of Frontier and that therefore their actions are privileged.

Under Massachusetts law, "[a] defendant may escape liability [for intentional interference with a contract] if the interference was privileged as part of his employment responsibilities." *Steranko v. Inforex, Inc.*, 5 Mass.App. 253, 362 N.E.2d 222, 235 (1977); *see Owen v. Williams*, 322 Mass. 356, 360, 77 N.E.2d 318 (1948); *Caverno v. Fellows*, 300 Mass. 331, 336–337, 15 N.E.2d 483 (1938). Whether a privilege exists in a particular case, however, is a factual question. *See, e.g., Owen*, 322 Mass. at 360, 77 N.E.2d 318. In fact, once a party shows that another party tortiously interfered with its contract, the other party bears the burden of proving that his actions are privileged. *Id.*

Balboa alleges that the individual plaintiffs intentionally and wrongfully interfered with its contract with Frontier. It has therefore adequately pleaded tortious interference with its contract. Individual plaintiffs may prove at trial that the interference is privileged, but because a factual question exists regarding the existence of a privilege, dismissal is inappropriate.

Accordingly, plaintiffs' motion to dismiss Count II of the counterclaim is DENIED.

Count III

■ Count III of Balboa's amended counterclaim (labeled "Count IV" in the amended counterclaim) alleges that the individual plaintiffs violated their obligation to Balboa of good faith and fair dealing. The individual plaintiffs move to dismiss Count III on the grounds that they were not parties to the contract and so owed Balboa no duty of good faith and fair dealing.

The obligation of good faith and fair dealing is imposed only on parties to a contract. *See Druker v. Jutras Associates, Inc.*, 370 Mass. 383, 348 N.E.2d 763 (1976); Restatement (Second) of Contracts § 205 (1981). The individual plaintiffs are not parties to the MGA agreement. As noted previously, they did not sign in their individual capacities either the MGA agreement or the papers assigning the agreement from Southern Underwriting Management to Frontier. By making the contract for Frontier, a disclosed principal, the indi-

vidual plaintiffs did not become parties to the agreement. *See Proshin v. Snider*, 349 Mass. 653, 655, 212 N.E.2d 216 (1965); Restatement (Second) of Agency § 320 and comment (a). The individual plaintiffs thus owed Balboa no obligation of good faith and fair dealing.

Balboa's contention that the individual plaintiffs should be held liable for tortiously causing Frontier to breach the implied covenant of good faith and fair dealing in the MGA agreement is inapposite. Individual plaintiffs may be liable under Count II for tortiously interfering with the implied covenant of good faith and fair dealing in the MGA agreement, but they are not directly liable for violation of an implied covenant in a contract to which they were not a party.

Count III names only the individual plaintiffs. Accordingly, the plaintiffs' motion to dismiss Count III of the counterclaim in its entirety is ALLOWED.

*Count IV*

In Count IV of the amended counterclaim, Balboa alleges that the individual plaintiffs engaged in unfair and deceptive acts and practices in violation of Mass.Gen. Laws c. 93A, § 11. The individual plaintiffs move for dismissal of Count IV on three grounds. First, they argue that chapter 93A applies only where both the plaintiff and defendant "have a place of business within the Commonwealth at the time of said losses." This requirement, added to chapter 93A in 1985, 1985 Mass. Acts, c. 278, § 1, was repealed earlier this year. 1986 Mass.Acts, c. 363, § 1. Count IV therefore is not barred by this provision.

Second, the individual plaintiffs contend that Balboa may not bring a chapter 93A action against them because they had no direct dealings with Balboa. But Count II raises the possibility that the individual plaintiffs tortiously interfered with Balboa's contractual relationship with Frontier. Such tortious interference could constitute an unfair method of competition or an unfair or deceptive act or practice in violation of chapter 93A. At the least, I should hear evidence on the question be-

fore determining whether under these particular circumstances the actions of the individual plaintiffs were unfair or deceptive. *See Noyes v. Quincy Mutual Fire Ins. Co.*, 7 Mass.App. 723, 389 N.E.2d 1046 (1979). Their status as corporate employees does not insulate the individual plaintiffs from liability for wrongful acts they have committed personally. *See Nader v. Citros*, 372 Mass. 96, 360 N.E.2d 870, 875 (1977). To the extent that they personally caused Frontier to breach the MGA agreement with Balboa, the individual plaintiffs may be liable under chapter 93A.

Third, the individual plaintiffs claim that their conduct, as alleged, does not constitute a knowing or willful violation of the statute and did not attain the "level of rascality" required by chapter 93A. Issues as to the state of mind of a party should not generally be resolved before hearing evidence. *See Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In this case, Balboa has alleged that the individual plaintiffs willfully and intentionally refused to remit premium payments due Balboa, refused to turn over claims files to Balboa, refused to turn over underwriting information to Balboa and issued or directed the issue of unauthorized insurance. These allegations, if proven, might satisfy the statutory requirement that treble damages be awarded only where a defendant commits a willful and knowing violation of the statute, M.G.L.A. c. 93A, § 11, and may demonstrate a level of rascality sufficient to satisfy the statute.

Accordingly, the plaintiffs' motion to dismiss Count IV of the counterclaim is DENIED.

*Claims Against David M. Donovan*

David M. Donovan is not a party to this action. Balboa nonetheless names him as a counterclaim defendant. The individual plaintiffs have moved to dismiss the "counterclaim" against Donovan on the grounds that he is not a party to the suit. Balboa asks that I treat the papers as a third-party complaint against Donovan. Balboa has served Donovan with a sum-

mons and a copy of the complaint. Donovan is the vice president of underwriting for Frontier, and the claims against him arise out of the same transactions and activities as the claims against the individual plaintiffs. Questions of law and fact regarding his liability are identical to the legal and factual questions raised by the counterclaim against the other individual plaintiffs. I therefore find it appropriate to join Donovan as a defendant on Balboa's counterclaim and will treat Balboa's purported counterclaim against him as a valid third party complaint. *See* Fed.R.Civ.P. 20(a).

Accordingly, the individual plaintiffs' motion to dismiss the claims against Donovan is DENIED.

*Conclusion*

The motion to dismiss Count I as to the individual plaintiffs and Donovan, and Count III in its entirety is ALLOWED.

The motion to dismiss Count II and Count IV is DENIED.